2008 UT 66

**Solomon Lee FORD, Plaintiff and Appellee.**

v.

**STATE of Utah, Defendant and Appellant,**

Nos. 20060720, 20070587.

Supreme Court of Utah.

Sept. 16, 2008.

Rehearing Denied Jan. 14, 2009.

· Kimberly Neville, Troy L. Booher, Emily Smith, Katherine · Carreau, Salt Lake City, for petitioner.

Mark L. Shurtleff, Att'y Gen., Thomas Brunker, Asst. Att'y Gen., Salt Lake City, for respondent.

On Certification from the Utah
Court of Appeals

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This appeal poses two questions. First, whether, in 1993, court commissioners were authorized to conduct preliminary hearings binding defendants over for trial. Second, whether defendants who succeed in vacating their convictions in a post-conviction relief proceeding are entitled to paid counsel to represent them during the State's appeal. We hold that court commissioners were entitled to conduct preliminary hearings binding defendants over for trial in 1993. We also hold that impecunious defendants who are granted post-conviction relief from their sentences are entitled to paid counsel if the State decides to appeal the district court's grant of relief.

## BACKGROUND

¶ 2 On August 19, 1993, Solomon Lee Ford (Ford) was charged by information with possession of a dangerous weapon and aggravated assault. On September 9, 1993, a court commissioner conducted a preliminary hearing and bound Ford over for trial. Ford was acquitted of the assault charge but convicted by a jury of possession of a dangerous weapon, a second degree felony, and was sentenced to serve not less than one year nor more than fifteen years in the Utah State Prison. Ford served thirteen years; during that time he filed four post-conviction requests for relief.

¶ 3 In his fourth post-conviction relief request, the district court determined that

Ford was improperly bound over for trial by a court commissioner who lacked judicial authority to conduct preliminary hearings. The district court explained: "The problem which is alleged here is that the Legislature acting alone could not authorize Commissioners to function as magistrates presiding over preliminary hearings." The district court analyzed the issue in three parts, "(1) whether a Commissioner in 1993 had authority to preside over a preliminary hearing; (2) if the Commissioner did not have such authority, whether the bindover was lawful; and (3) if the bindover was not lawful, did the district court have jurisdiction to try the Petitioner for the alleged crimes" or did Ford "knowingly, intelligently, and voluntarily waive[ ] his constitutional right to a preliminary hearing before a properly authorized magistrate." The district court found that Ford was "wrongfully bound over for trial and the trial court was without jurisdiction to try him."

¶ 4 Because Ford was impecunious, the district court appointed the Salt Lake Legal Defenders Association (LDA) to represent Ford while the court considered whether Ford was entitled to immediate release or only to a new trial. Ford's conviction was vacated, and he was released from prison. The State appealed. The district court and the court of appeals denied the State's motions to keep Ford incarcerated until the outcome of the appeal was determined.

¶ 5 LDA had a conflict and was unable to represent Ford on appeal. The district court granted LDA's motion to substitute counsel, but it failed to indicate whether substituted counsel would be pro bono or paid. The State argued that the appointment had to be pro bono. Ford's current counsel filed a motion to replace the substituted counsel and argued that under the Indigent Defense Act, the United States Constitution, and the Utah Constitution, Ford's counsel was entitled to compensation. The district court granted Ford's motion for paid counsel to represent him on appeal and entered an order to that effect. Under the Indigent Defense Act, the district court found: "Because it is the State, not Mr. Ford, that has chosen to appeal the Court's ruling and challenge the current status quo, the appeal is not a discretionary proceeding as to Mr. Ford. Therefore, Mr. Ford is entitled to paid counsel to defend against the State's appeal under 77–32–301(6)." Under the Utah Constitution, the district court also found: "Because Mr. Ford faces prison if the State is successful on appeal, the State's appeal is functionally equivalent to an original criminal prosecution and the right to counsel attaches." Finally, under the United States Constitution, the district court found: "[W]here a first appeal of right is successful, and the State petitions for discretionary review, the right to counsel does attach because the proceeding is not discretionary as to the person whose liberty interest is in jeopardy."

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 6 We review the district court's order granting Ford post-conviction relief for correctness. *See Wickham v. Galetka,* 2002 UT 72, ¶ 7, 61 P.3d 978. The district court's order appointing paid counsel to represent Ford in post-conviction proceedings implicates issues of statutory and constitutional interpretation that we also review for correctness. *See Duke v. Graham,* 2007 UT 31, ¶ 7, 158 P.3d 540 (citing *MacFarlane v. State Tax Comm'n,* 2006 UT 25, ¶ 9, 134 P.3d 1116 (discussing statutory interpretation); *Grand County v. Emery County,* 2002 UT 57, ¶ 6, 52 P.3d 1148 (discussing state constitutional interpretation)).

### II. BINDOVER BY COMMISSIONER

¶ 7 The district court vacated Ford's conviction, holding that the court commissioner who bound Ford over for trial lacked authority to do so, and therefore the district court had not had jurisdiction to try him. The district court apparently assumed that a bindover order constituted a core judicial function, and it ultimately concluded that under *Salt Lake City v. Ohms,* a commissioner could not properly enter such an order. 881 P.2d 844, 853 (Utah 1994). We disagree with the first premise, making an analysis under *Ohms* unnecessary.

¶ 8 In *State v. Humphrey,* we outlined the procedure for binding defendants over for trial:

By the bindover order, the magistrate requires the defendant to answer the information in the district court. The information is then transferred to the district court, permitting that court to take original jurisdiction of the matter. At that point, the district court has the inherent authority and the obligation to determine whether its original jurisdiction has been properly invoked. In doing so, the district court need show no deference to the magistrate's legal conclusion, implicit in the bindover order, that the matter may proceed to trial in district court, but may conduct its own review of the order.

823 P.2d 464, 465–66 (Utah 1991) (citations, internal quotation marks, and footnote omitted).

¶ 9 Article I, section 13 of the Utah Constitution gives "magistrates" the duty to conduct preliminary hearings. "Offenses heretofore required to be prosecuted by indictment, shall be prosecuted by information after examination and commitment by a *magistrate,* unless the examination be waived by the accused with the consent of the State, or by indictment, with or without such examination and commitment." Utah Const. art. I, § 13 (emphasis added); *see also* Utah Code Ann. § 78–7–17.5 (1992) (giving magistrates the authority to "conduct a preliminary examination to determine probable cause"). The Utah Constitution does not define a magistrate. At the time of Ford's preliminary hearing and conviction, the Utah Legislature defined a magistrate as "a justice or judge of a court of record or not of record or a commissioner of such a court appointed in accordance with Section 78–3–31." Utah Code Ann. § 77–1–3(4) (Supp.1992). Commissioners at the time were appointed by the Judicial Council and a majority of the district court judges in the district to which the commissioner would be assigned. *Id.* § 78–3–31(2)(a) (1992). Commissioners were required to "comply with applicable constitutional and statutory provisions, court rules and procedures, and rules of the Judicial Council," and "comply with the Code of Judicial Conduct to the same extent as full-time judges." *Id.* § 78–3–31(5)(a)–(b).

¶ 10 In reviewing a 1991 statutory amendment that authorized court commissioners to "accept pleas of guilty or no contest, impose sentence, and enter final judgment in misdemeanor cases," and "conduct a jury or nonjury misdemeanor trial in accordance with law," Utah Code Ann. § 78–3–31(6)(a) (1992), this court declared that commissioners were unable to perform "core judicial functions such as entering final orders and judgments or imposing sentence." *Salt Lake City v. Ohms,* 881 P.2d 844, 852 n. 17 (Utah 1994). However, this court did not invalidate the service of commissioners:

Court commissioners have provided a valuable service to the judiciary for over thirty years pursuant to constitutionally valid statutes. They have conducted fact-finding hearings, held pretrial conferences, made recommendations to judges, and provided counseling and other worthwhile functions. However, over that thirty-year period, commissioners were never allowed to perform ultimate or core judicial functions such as entering final orders and judgments or imposing sentence. In every case, commissioner actions led to recommendations which resulted in final review and signature by a judge.

*Id.* Whether an action is a core judicial function is based on whether "the commissioners' actions are reviewable by a judge [and] ultimate judicial power remains with the judge." *State v. Thomas,* 961 P.2d 299, 302 (Utah 1998) (holding that the issuance of a search warrant constituted a core judicial function). So long as the commissioner's actions are reviewed and the commissioner does not exercise ultimate judicial authority, his or her actions are not core judicial functions. *Id.*

¶ 11 Unlike the district court, we conclude that binding a defendant over to the district court for trial does not constitute a core judicial function. "[O]ur statutory provisions make an unmistakable distinction between the functions and powers of a judicial officer acting as magistrate and one acting as judge of a court." *Humphrey,* 823 P.2d at 467. "'A preliminary hearing is not a trial, and a

magistrate ... does not sit as a judge of a court and exercises none of the powers of a judge....' " *Id.* (quoting *Van Dam v. Morris,* 571 P.2d 1325, 1327 (Utah 1977)).

¶ 12 Ford argues that *State v. Jaeger,* 886 P.2d 53 (Utah 1994), stands for the proposition that when a magistrate refuses to bind a defendant over for trial and instead dismisses the information, the magistrate's order is final and appealable, thus qualifying the bindover decision as a core judicial function. However, *Jaeger* distinguished between dismissals, which it deemed to be subject to appeal, and bindover orders, which it described as "interlocutory." It made no assessment of the character of either type of order as part of a core judicial function: "The magistrate's decision to bind over is interlocutory; it keeps the case alive and on track. As such, the magistrate decides nothing more than that the case will proceed." *Jaeger,* 886 P.2d at 55. As noted in *Humphrey,* that decision has no final preclusive effect. 823 P.2d at 467–68. The district court has plenary authority to decide the jurisdictional question differently and quash the bindover order.

¶ 13 The commissioner who conducted the preliminary hearing and bound Ford over for trial had the authority to determine that the evidence to convict Ford was adequate to proceed to trial. The commissioner was not acting in a core judicial function, and Ford's bindover hearing was proper.

### III. PAID COUNSEL

¶ 14 We agree with Ford that in a post-conviction proceeding, when an indigent defendant has succeeded in a vacatur of his or her conviction, and the State chooses to appeal that vacatur, the defendant should be entitled to the assistance of paid counsel on appeal pursuant to the Indigent Defense Act, the Utah Constitution, and the United States Constitution.

### A. *Indigent Defense Act*

¶ 15 The Indigent Defense Act requires that legal counsel be provided "for each indigent who faces the substantial probability of the deprivation of the indigent's liberty." Utah Code Ann. § 77–32–301(1) (2003). For the constitutional reasons explained below, we agree with Ford that the State's appeal after Ford received post-conviction relief created a "substantial probability of the deprivation of [Ford's] liberty." We also agree with Ford that the Post Conviction Remedies Act does not conflict with the Indigent Defense Act. *Cf.* Utah Code Ann. § 78B–9–109 (2008), *with* Utah Code Ann. § 77–32–301(1) (2003). The Post Conviction Remedies Act provides that a court may appoint counsel on a pro bono basis to represent defendants on post-conviction petitions for relief. *Id.* § 78B–9–109(1). The Act indicates such appointment should occur at the request of the petitioner, and where an evidentiary hearing would be required or the "petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." *Id.* § 78B–9–109(2). Ford is no longer petitioning for post-conviction relief. He has already been granted such relief. Ford is now defending his grant of post-conviction relief against the State's appeal. Ford is defending his liberty interest and is therefore entitled to counsel under the Indigent Defense Act.

### B. *Utah Constitution*

¶ 16 Article I, section 7 of the Utah Constitution provides, "No person shall be deprived of life, liberty or property, without due process of law." Article I, section 12 gives the accused the right to counsel. In *State v. Eichler,* 25 Utah 2d 421, 483 P.2d 887, 889 (1971), this court held that impecunious defendants were entitled to court-appointed counsel at probation revocation hearings. We stated:

> It is in accordance with the assurance of the Utah State Constitution that an accused be provided with the assistance of counsel at every important stage of the proceedings against him. Inasmuch as ... a hearing involves the possibility of changing the defendant's status from one of being at liberty to one of being in confinement, it does no particular violence to one's sense of justice that it be regarded as an important stage of the proceeding against him at which he should have the assistance of counsel if he so desires.

*Id.* (internal quotation marks omitted). It does not matter whether a successful post-conviction petitioner is actually released from prison. If a court has granted a release, a defendant is entitled to counsel if the State attempts to "chang[e] the defendant's status" as to that relief by any means, including pursuing an appeal or bringing a new proceeding in district court.

¶ 17 The State's appeal seeking reversal of the district court's vacatur of Ford's conviction is the equivalent of an effort to "chang[e Ford's] status from one of being at liberty to one of being in confinement," and Ford is entitled to counsel in defending against the State's appeal.

### C. United States Constitution

¶ 18 The Sixth Amendment to the United States Constitution guarantees that individuals accused of crimes have the right to counsel. U.S. Const. amend. VI. The Fourteenth Amendment due process and equal protection clauses provide that individuals who cannot afford an attorney can have one appointed for them. U.S. Const. amend. XIV; *see also Douglas v. California*, 372 U.S. 353, 356–57, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (holding that defendants have a right to counsel on appeal). There is also a fundamental liberty interest that triggers the right to counsel. *See Walker v. McLain*, 768 F.2d 1181, 1183 (10th Cir.1985) ("It is the defendant's interest in personal freedom, and not simply the special sixth and fourteenth amendment right to counsel in criminal cases, which triggers the right to appointed counsel." (citing *Lassiter v. Dep't of Soc. Servs. of Durham County*, 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981))).

¶ 19 Ford has not argued that a right to counsel exists for defendants seeking discretionary post-conviction relief. We hold, however, that defendants who have been successful in obtaining a vacatur of their convictions have both a liberty and due process interest in their prospective freedom, and if the State chooses to pursue an appeal, the right to counsel does attach. In *Blankenship v. Johnson*, the Fifth Circuit Court of Appeals reviewed the circumstances of a defendant who was convicted of aggravated robbery, acquitted on direct appeal, but then arrested again after the State obtained a reversal of the acquittal on a petition for discretionary review. 118 F.3d 312, 314–15 (5th Cir.1997). The *Blankenship* court held:

> For many years, the courts have held that indigent criminal defendants have the right to appointed counsel in direct appeals. This right arises from the Equal Protection and Due Process Clauses. This right would be impaired, however, if the state were allowed to challenge the defendant's successful direct appeal without providing him with counsel after a discretionary appeal is granted to the state. The indigent criminal defendant, unrepresented by counsel, would be unable to defend the reversal of his conviction in all but the most compelling cases.

*Id.* at 317. We find the reasoning of the Fifth Circuit persuasive. We also agree with the Tenth Circuit, which has observed that "[i]t would be absurd to distinguish criminal and civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used.... The right to counsel, as an aspect of due process, turns not on whether a proceeding may be characterized as 'criminal' or 'civil,' but on whether the proceeding may result in a deprivation of liberty." *Walker*, 768 F.2d at 1183.

¶ 20 Ford has a right to counsel under the United States Constitution to defend against the State's appeal.

### CONCLUSION

¶ 21 The district court's order granting Ford post-conviction relief is reversed and his conviction is reinstated; its order requiring payment to Ford's counsel on appeal is affirmed.

¶ 22 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.