2012 UT 25

**Troy Michael KELL, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

No. 20090998.

Supreme Court of Utah.

May 4, 2012.

Rehearing Denied Aug. 29, 2012.

Jon M. Sands, Ken Murray, Arizona, Megan Blythe Moriarty, Salt Lake City, for appellant.

Mark L. Shurtleff, Att'y Gen., Thomas B. Brunker, Christopher D. Ballard, Asst. Att'ys Gen., Salt Lake City, for appellee.

Associate Chief Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 Troy Michael Kell brought a motion under rule 60(b) of the Utah Rules of Civil Procedure in an effort to resuscitate his petition for postconviction relief, which had been denied by the district court and affirmed by us on appeal. The district court determined that relief was unavailable under rule 60(b) because we had already affirmed its rejection of his petition and the case was therefore no longer "pending." Mr. Kell appeals. We affirm on alternate grounds.

## BACKGROUND

¶ 2 Mr. Kell was convicted of murder and sentenced to death.[1] This court affirmed his conviction and sentence on direct appeal. He challenged our ruling by filing a petition for postconviction relief. In the petition, Mr. Kell alleged ineffective assistance of trial counsel. The district court dismissed his petition for postconviction relief and on appeal we affirmed that dismissal.

¶ 3 In January 2009, four months after we ruled on his appeal, Mr. Kell, representing himself, filed a 60(b) motion, asking the district court to relieve him from its earlier dismissal of his petition for postconviction relief.[2] He asserted that his postconviction counsel (PCRA counsel) had wasted his postconviction opportunity by failing to adequately investigate, research, and raise possible postconviction claims. He further asserted that PCRA counsel had failed to keep him apprised of his appeal, including that PCRA counsel did not tell him that they were neither petitioning for a rehearing in this court nor petitioning for a writ of certiorari in the United States Supreme Court. He also asked the district court to appoint qualified, adequately funded counsel to assist him in his rule 60(b) challenge to the dismissal of the postconviction proceeding.

¶ 4 The State responded with a Motion to Dismiss and for Partial Summary Judgment. In short, the State argued that relief was not appropriate under rule 60(b) because the case was no longer "pending," that Mr. Kell had no right to effective assistance of postconviction counsel, and that he could not show that his postconviction counsel was in fact ineffective.

¶ 5 Mr. Kell did not respond to this motion, but again requested the appointment of counsel, stating that he needed counsel to help him reply to the complex arguments contained in the State's opposition memorandum.

■ ¶ 6 The district court denied Mr. Kell's 60(b) motion and his motion to appoint counsel. The district court held that because Mr. Kell's postconviction petition had been dismissed, appealed, and affirmed on appeal,

---

1. The underlying details of the crime, trial, appeal, postconviction petition, and postconviction appeal are not important to this appeal. They are recited in detail in our two previous visits with this case. *See* 2002 UT 106, 61 P.3d 1019; 2008 UT 62, 194 P.3d 913. There is no lingering question of innocence.

2. Although this motion was technically filed pro se, it was copied largely from his federal habeas petition, which was written with the help of his federal habeas counsel.

the underlying denial of his petition for post-conviction relief was no longer "pending" and thus the court could not consider the merits of the 60(b) motion. With the assistance of his federal habeas counsel, Mr. Kell filed a timely notice of appeal from the denial of his 60(b) motion, which we now address.

## ISSUES AND STANDARDS OF REVIEW

▐ ¶ 7 Mr. Kell first contends that the district court erred when it held that a motion filed under rule 60(b) of the Utah Rules of Civil Procedure must be filed while the action remains "pending." We typically review a district court's denial of a 60(b) motion for the abuse of discretion because "most are equitable in nature, saturated with facts, and call upon judges to apply fundamental principles of fairness that do not easily lend themselves to appellate review."[3] However, when the denial of a 60(b) motion is predicated on the district court's interpretation of the law, we review that decision for correctness.[4] Because the district court's decision in this matter hinged on a question of law, we apply the nondeferential correctness standard.

▐ ¶ 8 Next, Mr. Kell contends that the district court erred when it found that he was not entitled to the appointment of qualified and competent counsel to aid him in filing his Motion for Relief from and to Set Aside Judgment under rule 60(b). The district court's order "implicates issues of statutory and constitutional interpretation that we ... review for correctness."[5]

## ANALYSIS

### I. WE AFFIRM THE DISTRICT COURT'S DENIAL OF MR. KELL'S 60(b) MOTION, BUT DO SO ON ALTERNATE GROUNDS

¶ 9 We turn first to whether the district court erred when it denied Mr. Kell's 60(b) motion on the grounds that the motion was barred because the case was no longer "pending." Mr. Kell asks us to reverse the district court's ruling and remand to allow him to develop his 60(b) motion and other postconviction matters.

▐ ¶ 10 Before we address this on the merits, however, we pause to consider whether the issue was preserved and thus available for review on the merits. The State argues that it was not preserved because Mr. Kell did not directly argue to the district court that he was allowed to bring a 60(b) motion under these circumstances. He did not fully develop his argument or offer appropriate citation to authority. The State notes that *it* argued that a 60(b) ruling was not appropriate and Mr. Kell did not respond.

▐ ¶ 11 The State misconstrues the preservation requirement. "The two primary considerations underlying the [preservation] rule are judicial economy and fairness."[6] First, we ask that an issue be preserved in order to "give[ ] the trial court an opportunity to address the claimed error, and if appropriate, correct it."[7] Here, the district court not only had an opportunity to rule on the issue of whether the case was pending, it did rule on it. In fact, the district court conducted a thoroughgoing analysis of the meaning and application of the concept of "pending." The district court's decision to take up the question of "pending" may have been fortuitous for Mr. Kell. It conclusively overcame any objection that the issue was not preserved for appeal.

¶ 12 As to fairness, "[i]t generally would be unfair to reverse a district court for a reason presented first on appeal." "Notions of fairness ... dictate that a party should be given an opportunity to address the alleged error in the trial court. Having been given such a chance, the party opposing a claim of error might have countered the argument."[8] The State quite obviously had the opportunity to counter the argument in the district court.

---

3. *Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198.

4. *Id.*

5. *Ford v. State*, 2008 UT 66, ¶ 6, 199 P.3d 892.

6. *Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828.

7. *Id.* (internal quotation marks omitted).

8. *Id.* ¶ 16 (citation omitted).

¶ 13 We next consider whether the district court erred when it determined that the 60(b) motion could not be brought because the case was no longer pending. Rule 60(b) allows "the court . . . in the furtherance of justice [to] relieve a party or his legal representative from a final judgment, order, or proceeding" for one of five enumerated reasons or "any other reason justifying relief from the operation of the judgment." [9] The rule demands that "[t]he motion shall be made within a reasonable time" and, if it is based on one of the first three enumerated reasons, "not more than 3 months after the judgment, order, or proceeding was entered or taken." [10]

¶ 14 Mr. Kell did not specify which of rule 60(b)'s subsections he relied upon, but his sole argument was that his postconviction attorneys were grossly negligent in representing him and provided him ineffective assistance. This claim does not fall within any of the five specified subsections of rule 60(b). In *Menzies v. Galetka*, we determined that Mr. Menzies' ineffective assistance of counsel claim fell under the province of subsection (b)(6).[11] Following that precedent, we treat Mr. Kell's motion as one for relief under subsection (b)(6). Rule 60(b)(6) imposes a temporal restriction, albeit an imprecise one, requiring that the motion be brought within a "reasonable time."

¶ 15 The district court evaluated whether the petition was still "pending." It analyzed the meaning of "pending," including its use in the corollary federal statute, 28 U.S.C. § 2244(d)(2). The district court then turned to Utah case law to determine that "a case is pending from the time of its commencement until its final determination on appeal." [12] The district court concluded that because we had ruled, and because our ruling is, by definition, "final," the underlying action was no longer "pending," and a 60(b) motion was therefore inappropriate.

¶ 16 The language of rule 60(b) does not, by its terms, require that an action be "pending." Rule 60(b) does, however, attempt to grapple with the tension between "the competing interests of finality and fairness." [13] The rule "seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." [14] And, in fact, finality, "standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." [15]

¶ 17 We concede that the procedural posture of Mr. Kell's 60(b) motion is novel, if not unique, and that it raises peculiar questions of its legitimacy. We are reticent, however, to embrace the district court's reasoning and its necessary inference that rule 60(b) can never provide relief after an appellate court

---

9. The relevant portion of rule 60(b) states:

On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and for reasons (1), (2), or (3), not more than 3 months after the judgment, order, or proceeding was entered or taken.

10. *Id.*

11. 2006 UT 81, ¶ 75, 150 P.3d 480.

12. *See Julian v. State*, 2002 UT 61, ¶ 11, 52 P.3d 1168 (quoting *Boucofski v. Jacobsen*, 36 Utah 165, 104 P. 117, 120 (1909)).

13. *Menzies*, 2006 UT 81, ¶ 63, 150 P.3d 480.

14. *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (internal quotation marks and emphasis omitted).

15. *Gonzalez v. Crosby*, 545 U.S. 524, 529, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005).

has affirmed the underlying decision that is being challenged by the 60(b) motion.

¶ 18 We consider instead the appropriate uses of rule 60(b) more broadly. Rule 60(b) is designed to provide relief to a party that has lost its case. The remedies provided by rule 60(b) should not be understood to be "a substitute for appeal." [16] Subsection (6), particularly, "should be very cautiously and sparingly invoked by the [c]ourt only in unusual and exceptional circumstances." [17] For example, in Utah, "[t]he most common other reason for which courts have granted relief [under rule 60(b)(6) ] is when the losing party fails to receive notice of the entry of judgment in time to file an appeal." [18]

¶ 19 We allowed rule 60(b) to be invoked in *Menzies*, and in fact, stated that "the rule is designed to be remedial and must be liberally applied," [19] though we also cautioned that "rule 60(b)(6) is meant to be the exception rather than the rule." [20] But in *Menzies*, we applied the rule to a default judgment.[21] Although the language of the rule does not distinguish default judgments from other judgments, "[a]dditional considerations come into play when the 60(b) motion concerns a default judgment." [22] We acknowledged those considerations in *Menzies* when we noted the inequity that arises when a litigant has no opportunity for review. We stated that "a district court should be generally indulgent toward vacating *default judgments* and must incline towards granting relief in a doubtful case to the end that the party may have a hearing." [23] We concluded, "it is quite uniformly regarded as an abuse of discretion to refuse to vacate *a default judgment* where there is a reasonable justifica-

tion or excuse for the . . . failure . . . and timely application is made to set it aside." [24]

¶ 20 In this situation, however, Mr. Kell did not move to set aside a default judgment in the hopes of obtaining a hearing. He moved to set aside a judgment that had been heard, ruled on, and appealed, but he attempted to do so on the grounds that the proceedings should be disregarded because his counsel had been ineffective. The generous language of *Menzies* directed at default judgments therefore does not control this case.

¶ 21 We decline to adopt the district court's rule that a 60(b) motion can never be used after we have reviewed the underlying action. Instead, we would allow a 60(b) motion after an appellate court has affirmed the underlying judgment only in "unusual and exceptional circumstances." And we note that where this court has already had the opportunity to rule on the very motion being attacked, those circumstances would have to be very unusual and exceptional indeed.

¶ 22 Furthermore, those "unusual and exceptional circumstances" would have to be circumstances that did not manipulate or circumvent the Post–Conviction Remedies Act (PCRA), now codified in Utah Code sections 78B–9–101 to –110. The PCRA allows "a person who has been convicted and sentenced for a criminal offense [to] file an action in the district court . . . for post-conviction relief to vacate or modify the conviction or sentence." [25] However, "[a] person is not eligible for relief . . . upon any ground that," among other things, "could have been but was not raised at trial or on appeal," [26] unless "the failure to raise that ground was

16. *Cessna Fin. Corp.*, 715 F.2d at 1444.

17. *Robinson v. Baggett*, 2011 UT App 250, ¶ 28, 263 P.3d 411 (alteration in original) (internal quotation marks omitted).

18. *Oseguera v. Farmers Ins. Exch.*, 2003 UT App 46, ¶ 9, 68 P.3d 1008 (second alteration in original) (internal quotation marks omitted).

19. *Menzies*, 2006 UT 81, ¶ 63, 150 P.3d 480.

20. *Id.* ¶ 71.

21. *Id.* ¶¶ 69, 103.

22. *Cessna Fin. Corp.*, 715 F.2d at 1444.

23. *Menzies*, 2006 UT 81, ¶ 63, 150 P.3d 480 (emphasis added) (citations omitted) (internal quotation marks omitted).

24. *Id.* (alterations in original) (emphasis added) (internal quotation marks omitted).

25. Utah Code § 78B–9–104(1).

26. *Id.* § 78B–9–106(1)(c).

due to ineffective assistance of [trial or appellate] counsel."[27] Also, "[a] petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued."[28]

¶ 23 In 2008, the legislature amended the PCRA to prohibit claims of ineffective assistance of *postconviction* counsel in a capital case: "Nothing in this chapter shall be construed as creating the right to the effective assistance of post-conviction counsel, and relief may not be granted on any claim that post-conviction counsel was ineffective."[29] The PCRA also plainly states that it "establishes *the sole remedy* for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies, including a direct appeal ... [and] replaces all prior remedies for review, including extraordinary or common law writs."[30] These amendments had not been enacted before *Menzies* and were therefore not at issue in that case.

¶ 24 Because the PCRA allows post-conviction petitions only under circumstances defined by statute, we foresee that 60(b) motions might be brought in an attempt to evade the PCRA. This is not permitted by law.

¶ 25 Mr. Kell's motion provides us with the first opportunity to explore the tension between rule 60(b) and the PCRA. By "tension," we mean the activity at the intersection of two conflicting legal principles. The PCRA and rule 60(b) can be in direct conflict. Where that occurs, the PCRA prevails. On the other hand, the PCRA does not fully extinguish the relevance of rule 60(b). The task of courts is to discriminate in a principled way between postconviction uses of rule 60(b) that are legitimate and those that are forbidden. Other jurisdictions have developed rules of discernment and we draw on their analysis for guidance. The federal system, for example, has a similar, but not identical, problem. The federal equivalent to the PCRA is the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2244(b). Like the PCRA, the AEDPA prohibits a petitioner from raising a claim in a "second or successive habeas corpus application" if that claim was previously raised.[31] The AEDPA allows a petitioner to raise a claim in a second or successive petition only if

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.[32]

¶ 26 The United States Supreme Court described the intersection of the AEDPA and federal rule 60(b) this way:

> Rule 60(b) has an unquestionably valid role to play in habeas cases. The Rule is often used to relieve parties from the effect of a default judgment mistakenly entered against them, a function as legitimate in habeas cases as in run-of-the-mine civil cases. The Rule also preserves parties' opportunity to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction—a consideration just as valid in habeas cases as in any other, since absence of jurisdiction altogether deprives

---

**27.** *Id.* § 78B–9–106(3).

**28.** *Id.* § 78B–9–107(1).

**29.** *Id.* § 78B–9–202(4).

**30.** *Id.* § 78B–9–102(1) (emphasis added); *see also Julian v. State,* 2002 UT 61, ¶ 4, 52 P.3d 1168 ("The PCRA replaced prior post-conviction

remedies with a statutory, substantive legal remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies." (internal quotation marks omitted)).

**31.** 28 U.S.C. § 2244(b)(1).

**32.** *Id.* § 2244(b)(2).

a federal court of the power to adjudicate the rights of the parties.[33]

¶ 27 However, the court drew a sharp distinction between the above examples, "when a Rule 60(b) motion attacks ... some defect in the integrity of the federal habeas proceedings,"[34] and those circumstances in which the motion attacks "the substance of the federal court's resolution of a claim on the merits."[35] Where the motion attacks the substance of the court's ruling, it will be prohibited. "Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on" one of AEDPA's enumerated exceptions.[36] This is true even if the 60(b) motion is not *technically* a habeas petition, but similar enough to justify the comparison: "A habeas petitioner's filing that seeks vindication of ... a claim [presented in a second or successive habeas corpus application] is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute."[37]

¶ 28 We agree with this reasoning. Although we have established in this case that the mere fact that an appellate court has affirmed an underlying district court decision does not per se bar a 60(b) motion, rule 60(b) may not circumvent conflicting statutory mandates if a statute occupies the field that would otherwise be controlled by rule 60(b). Thus, the rule might be an appropriate avenue when the motion does not attempt to achieve relief that the PCRA would bar. But when a 60(b) motion acts as a substitute for a prohibited postconviction petition, we cannot allow its use.

¶ 29 In this case, Mr. Kell argues that his 60(b) motion was proper—not a substitute for a second postconviction petition—because counsel's inadequate representation undermined the "integrity" of the entire proceeding. Although Mr. Kell filled many pages with arguments allegedly overlooked by his lawyers, his entire 60(b) motion was brought under one overarching theory: that his postconviction counsel rendered such ineffective assistance as to make his effort to have a fair evaluation of his claims of error meaningless. He frames his argument not as an ineffective assistance of counsel claim, but as an attempt to regain his postconviction process entirely. He contends that he "did not ask to supplement his amended petition with one, two, or even twenty claims which his appointed counsel had previously overlooked. Instead, he asked the district court to 'set aside the entire course of [PCRA counsel's] prior representation, appoint me qualified and adequately-funded counsel to assist me, and provide me the opportunity to properly develop my case.'"

¶ 30 Stated differently, Mr. Kell contends that there are varying degrees of ineffectiveness, and that very ineffective assistance satisfies the "extraordinary circumstances" standard of rule 60(b). Following this reasoning, a defendant who received moderately ineffective assistance would be barred by the PCRA from challenging the proceedings, but a defendant who received grossly ineffective assistance would be allowed to do so under rule 60(b). This would present the district court with an unusual factual inquiry: When is a lawyer's assistance just generically ineffective and when is it egregiously ineffective? This is an unworkable and unnecessary test. We are unconvinced that the two-part test established in *Strickland v. Washington*[38] is up to the task of assessing the propriety of 60(b) motions in the context of ineffective assistance of postconviction counsel claims.[39] Although

---

**33.** *Gonzalez,* 545 U.S. at 534, 125 S.Ct. 2641 (citation omitted).

**34.** *Id.* at 532.

**35.** *Id.*

**36.** *Id.* at 531.

**37.** *Id.* (quoting 28 U.S.C. § 2254 r. 11).

**38.** 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**39.** The *Gonzalez* court recognized this problem. In a footnote, it stated, "[w]e note that an attack based on the movant's own conduct, or his habeas counsel's omissions, ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits deter-

we recognize and respect the fairness aspect of rule 60(b), we will not create loopholes in the PCRA that would inspire serial 60(b) motions without end.

¶31 We therefore are unpersuaded by Mr. Kell's assertion that, while some claims of ineffective assistance are appropriately raised under the PCRA, claims of especially gross or egregious ineffectiveness may be raised under rule 60(b). And because Mr. Kell's entire 60(b) motion is barred by the PCRA's prohibition against subsequent post-conviction petitions, we conclude that it may not be brought under rule 60(b). We therefore affirm the district court's conclusion that Mr. Kell's motion was improper under rule 60(b), but do so on the alternate grounds set forth in this opinion.

## II. THE DISTRICT COURT DID NOT ERR WHEN IT DETERMINED THAT MR. KELL DID NOT HAVE A RIGHT TO COUNSEL TO ASSIST HIM WITH HIS 60(b) MOTION

¶32 Next, Mr. Kell contends that the district court erred when it determined that, because he was not entitled to file his rule 60(b) motion, he was also not entitled to counsel to assist him with filing his 60(b) motion. He argues that he had a "statutory and possibly constitutional right to the appointment of counsel to represent him in his post-conviction matter," including the 60(b) motion.

¶33 He relies on *Menzies v. Galetka*, in which we determined that Mr. Menzies, in bringing his rule 60(b) motion, "ha[d] a statutory right to the effective assistance of counsel" under the PCRA.[40] This ruling was necessarily grounded on the underlying proposition that Mr. Menzies was statutorily entitled to appointed counsel, under Utah Code section 78–35a–202(2)(a) (2002).[41] That statute has been renumbered, but is still in force. It states, "If a petitioner requests the court to appoint counsel, the court shall de-termine whether the petitioner is indigent. . . . If the court finds that the petitioner is indigent, it shall . . . promptly appoint counsel. . . ."[42]

¶34 But Mr. Menzies' statutory right to counsel to assist him *with his 60(b) motion* was not squarely at issue in that case. Instead, we focused on his statutory right to counsel—and whether counsel was effective-in his *postconviction petition.*[43] *Menzies* therefore does not stand for the proposition that petitioners are statutorily entitled to the assistance of appointed counsel for all post-judgment motions.

¶35 Here, Mr. Kell requested counsel to assist him with a 60(b) motion, not with a postconviction petition. The PCRA's statutory grant of appointed counsel does not apply. We affirm the district court's conclusion that Mr. Kell is not statutorily entitled to counsel to assist him with his 60(b) motion.

¶36 Mr. Kell also suggests that he has a "possibly constitutional" right to counsel. He cites article I, section 12 of the Utah Constitution but develops the point no further. This argument was not preserved in the district court, however, and "the preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred."[44] Mr. Kell has demonstrated neither and we therefore do not address his constitutional arguments on appeal.

## CONCLUSION

¶37 Rule 60(b) does not have a "pending" requirement and is not necessarily inappropriate in all cases in which this court has already ruled. Rule 60(b) might have application in cases even where we have already affirmed the district court's underlying decision, though those circumstances will be particularly extraordinary and we will be partic-

---

mined favorably." 545 U.S. at 532 n. 5, 125 S.Ct. 2641 (citation omitted).

40. 2006 UT 81, ¶84, 150 P.3d 480.

41. *Id.* ¶77 n. 10.

42. UTAH CODE § 78B–9–202(2)(a).

43. *See Menzies*, 2006 UT 81, ¶2, 150 P.3d 480.

44. *State v. Holgate*, 2000 UT 74, ¶11, 10 P.3d 346.

ularly stingy about its use. But it may not be used as a way to circumvent the PCRA. We conclude that in this case, Mr. Kell's claims were barred by the PCRA and therefore could not be brought under rule 60(b). We affirm the district court's denial of Mr. Kell's 60(b) motion, not on the grounds that the action was no longer "pending," but on the grounds that the action was barred by the PCRA.

¶ 38 We also affirm the district court's conclusion that Mr. Kell did not have a statutory right to the assistance of counsel in preparing his 60(b) motion. We decline to address his "possibly constitutional" argument because it was not preserved.

Associate Chief Justice NEHRING authored the opinion of the Court, in which Chief Justice DURRANT, Justice DURHAM, Justice PARRISH, and Justice LEE joined.