*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2015 UT 4**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

DOUGLAS STEWART CARTER,
*Appellant*,

*v.*

STATE OF UTAH,
*Appellee*.

No. 20130517
FILED January 23, 2015

Fourth District, Provo Dep't
The Honorable Lynn W. Davis
No. 060400204

Attorneys:

Loren E. Weiss, David A. Christensen, Salt Lake,
Paula K. Harms, Phoenix, AZ, for appellant

Sean D. Reyes, Att'y Gen., Thomas B. Brunker, Erin Riley,
Asst. Att'ys Gen., Salt Lake City, for appellee

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

### INTRODUCTION

¶1      In this case, Douglas Stewart Carter asks us to review two district court rulings against him. The first is the district court's denial of his rule 60(b) motion seeking to overturn a judgment denying him post-conviction relief. The second is the court's dismissal of one of Mr. Carter's successive postconviction petitions for lack of subject matter jurisdiction. We affirm the district court's denial of Mr. Carter's rule 60(b) motion, but reverse its dismissal of Mr. Carter's post-conviction petition.

### BACKGROUND

¶2      Mr. Carter was convicted of first-degree murder and sentenced to death in 1985. The evidence against him included trial testimony from Epifanio and Lucia Tovar, undocumented immigrants from Mexico and friends of Mr. Carter, who were with him shortly before and after the time of the murder. At trial, the

Tovars testified about statements Mr. Carter allegedly made to them regarding details of the crime. On cross-examination by Mr. Carter's trial counsel, the Tovars were asked whether they had been given anything by the state in exchange for their testimony. The Tovars replied they had been given nothing but the court-ordered witness fees of fourteen dollars. On redirect examination, the prosecutor did not address this issue. After trial, the Tovars apparently could not be located, and over the next two decades no new information surfaced regarding their trial statements.

¶3     Shortly after his conviction, Mr. Carter directly appealed his conviction and sentence. We affirmed the conviction but vacated the sentence, *State v. Carter* (*Carter I*), 776 P.2d 886 (Utah 1989), and ultimately affirmed the death sentence after the district court held a new sentencing hearing, *State v. Carter* (*Carter II*), 888 P.2d 629 (Utah 1995).

¶4     Mr. Carter then began pursuing postconviction relief. He first filed two claims under Utah's Post Conviction Remedies Act (PCRA), in which he challenged, among other things, aspects of his trial, his counsel, and his confession. Mr. Carter's first PCRA petition (First Petition) was denied, and we affirmed that judgment in 2001. *Carter v. Galetka* (*Carter III*), 2001 UT 96, 44 P.3d 626. Mr. Carter then filed his second PCRA petition in 2006 (Second Petition), which was denied by the district court on April 27, 2009. Mr. Carter subsequently appealed, and we affirmed the district court's denial of the Second Petition in October 2012. *Carter v. State* (*Carter IV*), 2012 UT 69, 289 P.3d 542.

¶5     In 2011, while Mr. Carter's appeal of the Second Petition was pending, Mr. Carter's appellate counsel finally located the Tovars, then living in Mexico, and interviewed them about their trial statements. Contrary to what they had stated on the stand, the Tovars maintained, in signed affidavits, that during the pendency of the trial the police moved the Tovar family to a new apartment, paid for rent and utilities, bought food for the family and toys for the children, and sang Christmas carols at their home. The couple's affidavits further stated that the police told them they were to remain silent about the police's payment of rent and living expenses, and further threatened Epifanio with arrest and deportation if the couple did not cooperate with the investigation and prosecution. Mr. Carter's counsel also obtained affidavits from retired police personnel who had worked on Mr. Carter's case in 1985. These affidavits supported some of the Tovars' allegations that they received financial assistance. Armed with this new information,

Mr. Carter's counsel attempted to overturn Mr. Carter's conviction through a series of related filings.

¶6     First, on August 5, 2011—more than two years after the Second Petition was denied—Mr. Carter filed a rule 60(b) motion for relief from the district court's denial of the Second Petition. *See generally* UTAH R. CIV. P. 60(b). Mr. Carter argued that the signed affidavits from the Tovars and the retired officers constituted "newly discovered evidence" under rule 60(b)(2) that required relief from the judgment. Alternatively, Mr. Carter argued that rule 60(b)(6)—which allows a court to relieve a party from a judgment for "any other reason justifying relief"—could be used to achieve the same result.

¶7     Rule 60(b) requires that a motion based upon subsection (2)—newly discovered evidence—be brought within ninety days of the judgment. UTAH R. CIV. P. 60(b). But motions based upon subsection (6)—any other reason justifying relief—must be brought only "within a reasonable time." *Id.* Although more than two years had passed since the district court's judgment on the Second Petition, Mr. Carter argued that the nature of his newly discovered evidence required either an exception to the ninety day time bar in subsection (2) or application of subsection (6)'s "reasonable time" standard. Mr. Carter alleged that his newly discovered evidence was entitled to this treatment because it had been suppressed by the prosecution in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In essence, Mr. Carter argued it would be inequitable to apply rule 60(b)(2)'s ninety-day time bar to preclude a defendant from obtaining relief under circumstances involving evidence suppressed by the state.

¶8     The district court denied Mr. Carter's rule 60(b) motion as untimely, concluding that because Mr. Carter's motion was based upon "newly discovered evidence," the motion should have been brought within ninety days of the judgment. Moreover, the court determined that because subsection (2) clearly governed Mr. Carter's claims, Mr. Carter could not alternatively use the catchall provision in subsection (6) to avoid the ninety-day time bar. The court noted, however, that its denial of the rule 60(b) motion did not preclude Mr. Carter from "rais[ing] his newly discovered evidence claims in a separate petition for post-conviction relief."

¶9    Accordingly, Mr. Carter filed a new PCRA petition on March 27, 2012[1]—his third to date (Third Petition)—based upon the same newly discovered evidence presented in his rule 60(b) motion. The filing was captioned "Third Petition for Post-Conviction Relief." Mr. Carter's counsel left a blank space for a case number in the caption but listed Judge Davis as the presiding judge. The body of the Third Petition contained a footnote that stated the pre-2008 amendments to the PCRA should apply because the filing was intended only to "amend and supplement" his Second Petition. Approximately three weeks after filing the petition, however, Mr. Carter's counsel filed a notice of errata striking this footnote.

¶10   Because Mr. Carter's counsel had included Judge Davis's name on the Third Petition,[2] the clerk of court was confused about whether this filing was simply an additional motion that should be filed in one of Judge Davis's existing cases, or rather a new PCRA petition that required a new case number. The clerk called Mr. Carter's counsel to remedy the confusion, but the parties dispute what was said during that conversation. Mr. Carter's counsel claims the clerk informed him that this petition *had* to be filed under one of Mr. Carter's two existing cases before Judge Davis. Mr. Carter's counsel stated that given the choice between the two cases, he reluctantly agreed to have it filed under the Second Petition since it was more closely related. He maintained, however, that he felt this procedure was improper because he intended the filing to be a new and separate PCRA petition. In contrast, the clerk claims that upon informing Mr. Carter's counsel of her confusion, he directed her to file the petition under the case number already assigned to the Second Petition. Whatever actually transpired during that telephone conversation, the clerk ultimately did not assign the Third Petition a new case number, as would have been proper in light of its caption, but instead filed it under the case number already assigned to the Second Petition.

---

[1] This filing would have been roughly four months prior to the PCRA's one-year deadline, assuming, as the parties do, that the date the Tovars signed their affidavits, April 19, 2011, is the "date on which petitioner knew or should have known, in the exercise of reasonable diligence, of [the particular] evidentiary facts on which the petition is based." UTAH CODE § 78B-9-107(2)(e).

[2] Appellant's brief asserts that counsel reasonably assumed that a successive petition would be assigned to Judge Davis, who had overseen Mr. Carter's Second Petition case. *See* UTAH R. CIV. P. 65C(g).

¶11    The state seized upon this fact and moved to dismiss the Third Petition on grounds that the district court lacked jurisdiction to consider it. Relying on the previously described footnote (notwithstanding its removal as errata)—which characterized the Third Petition as an "amendment" to the Second Petition—the state contended that because Mr. Carter had already appealed from the denial of the Second Petition, jurisdiction over the Second Petition had transferred from the district court to this court. Consequently, the state argued, the district court lacked jurisdiction to consider any amendments to the Second Petition, including this new filing.

¶12    In response, Mr. Carter argued that the Third Petition was—and always had been—a new petition rather than an amendment to the Second Petition, regardless of the number the clerk had assigned to it. He explained that the errant footnote had been mistakenly carried over from a previous memorandum in support of the Second Petition and was "simply missed" in proofreading the Third Petition. Accordingly, Mr. Carter urged the court to not dismiss the Third Petition but to simply assign it a new case number retroactive to the original filing date of March 27, 2012.

¶13    The court agreed with the state's arguments and granted the motion to dismiss the Third Petition for lack of jurisdiction. In doing so, the court declined to assign the Third Petition a new case number. The court held that because the case must be dismissed for lack of jurisdiction, resolution of the factual dispute surrounding the filing of the third petition was premature, as was any determination regarding future *nunc pro tunc* relief, but that those issues would "certainly arise if [Mr.] Carter files a [subsequent] petition and the State asserts a time-bar defense."

¶14    Mr. Carter separately appealed from both the district court's denial of his rule 60(b) motion and its dismissal of the Third Petition for lack of jurisdiction. We consolidated both appeals.[3]

---

[3] After filing these appeals, Mr. Carter refiled his Third Petition (now the Fourth Petition), and asked the district court for *nunc pro tunc* relief to backdate the Fourth Petition to the date the Third Petition was filed. The district court denied Mr. Carter's motion. Though this ruling is not before us on appeal, the state filed a suggestion of mootness with this court, arguing that the question whether the district court had jurisdiction to grant *nunc pro tunc* relief in the Third Petition case is mooted by the district court's holding in the Fourth Petition case. We disagree. An issue on appeal is moot only "if during the pendency of the appeal circumstances

(continued...)

**STANDARD OF REVIEW**

¶15 We typically review a district court's denial of a rule 60(b) motion for an abuse of discretion because such rulings are usually "equitable in nature, saturated with facts, and call upon judges to apply fundamental principles of fairness that do not easily lend themselves to appellate review." *Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198. But when the denial of a rule 60(b) motion turns in part on the district court's interpretation of the rule, we review those underlying legal determinations for correctness. *See Kell v. State*, 2012 UT 25, ¶ 7, 285 P.3d 1133.

¶16 We also review for correctness the district court's determination that it lacked jurisdiction over the Third Petition. *See Beaver Cnty. v. Qwest, Inc.*, 2001 UT 81, ¶ 8, 31 P.3d 1147.

**ANALYSIS**

I. THE DISTRICT COURT PROPERLY DENIED MR. CARTER'S RULE 60(b) MOTION BECAUSE IT WAS UNTIMELY

¶17 Mr. Carter asserts the district court erred by denying his rule 60(b) motion on timeliness grounds. Rule 60(b) of the Utah Rules of Civil Procedure allows "the court . . . in the furtherance of justice [to] relieve a party or his legal representative from a final judgment, order, or proceeding" for one of the enumerated reasons listed in subsections (1) through (5) or for "any other reason justifying relief from the operation of the judgment" as provided in subsection (6). The rule requires the motion to "be made within a reasonable time" and, if it is predicated on one of the first three

---

[3] (...continued)
change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *Navajo Nation v. State (In re Adoption of L.O.)*, 2012 UT 23, ¶ 8, 282 P.3d 977 (internal quotation marks omitted). The state mischaracterizes the question before us on appeal. It is not whether the district court had jurisdiction to grant *nunc pro tunc* relief in the Third Petition case, but whether the district court had jurisdiction to consider the Third Petition at all. The district court's decision in the Fourth Petition case regarding *nunc pro tunc* relief did not eliminate the controversy between the parties on the question of the district court's subject matter jurisdiction over the Third Petition. Indeed, contrary to the state's suggestion, today's holding that the district court had jurisdiction to consider Mr. Carter's Third Petition is "of [] legal effect" because it allows the petition to go forward despite the district court's conclusion in the Fourth Petition case.

enumerated reasons—one of which is newly discovered evidence—"not more than 90 days after the judgment, order, or proceeding was entered or taken." UTAH R. CIV. P. 60(b). A party may not resort to subsection (6)'s catchall provision when the grounds for relief fall within subsections (1) through (5). *See Laub v. S. Cent. Utah Tel. Ass'n*, 657 P.2d 1304, 1306–07 (Utah 1982) (holding that the residuary clause of rule 60(b) may be employed only if the ground asserted for relief is "one *other* than those listed" in the preceding subsections). Otherwise, a party could use subsection (6) to circumvent the ninety day time limitation for filing motions grounded in the reasons set forth in subsections (1) through (3). *See Kanzee v. Kanzee*, 668 P.2d 495, 497 (Utah 1983) (holding that because appellant asserted grounds for relief that were listed in subsection (1), the appellant was "not entitled to use [rule 60(b)(6)] to circumvent the three-month limitation").

¶18 Despite this limitation, Mr. Carter argues that because his newly discovered evidence was allegedly suppressed by the state in violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), the court should have either declined to apply rule 60(b)(2)'s ninety-day time bar or resolved his claims under the "interests of justice" and "reasonable time" standards stated in rule 60(b)(6). We disagree. Mr. Carter's motion for relief from the judgment is based entirely on newly discovered evidence—the ground listed in subsection (2). Rule 60(b) makes no distinction between different types of newly discovered evidence for purposes of the ninety-day time bar, and we decline to create one. Moreover, our precedent plainly prevents Mr. Carter from shoehorning his newly discovered evidence claim into the residual clause of subsection (6) to avoid the ninety-day time bar. We therefore affirm the district court's dismissal of Mr. Carter's rule 60(b) motion because it was brought more than two years after the judgment, long past the expiration of the ninety-day deadline imposed by the rule.[4]

---

[4] In doing so, we acknowledge that the PCRA places some limits on the use of rule 60(b) in PCRA cases. As we held in *Kell v. State*, "[a 60(b) motion] might be an appropriate avenue when the motion does not attempt to achieve relief that the PCRA would bar. But when a 60(b) motion acts as a substitute for a prohibited postconviction petition, we cannot allow its use." 2012 UT 25, ¶ 28, 285 P.3d 1133.

Both the PCRA and rule 60(b)(2) allow petitioners to seek relief based on newly discovered evidence. UTAH CODE § 78B-9-104(1)(e); UTAH R. CIV. P. 60(b)(2). It is therefore conceivable that the two laws
(continued...)

## II. THE DISTRICT COURT ERRED WHEN IT GRANTED THE STATE'S MOTION TO DISMISS THE THIRD PETITION FOR LACK OF JURISDICTION

¶19    The district court concluded that it lacked jurisdiction over Mr. Carter's Third Petition because the clerk filed it under the Second Petition's case number. "A court has subject matter jurisdiction when it has the authority . . . to decide the case." *J.M.W. v. T.I.Z.* (*In re Adoption of Baby E.Z.*), 2011 UT 38, ¶ 30, 266 P.3d 702 (alteration in original) (internal quotation marks omitted). In Utah, that authority derives from the Utah Constitution, state statute, or a combination of the two.[5]

¶20    "[T]he concept of subject matter jurisdiction relates to the relationship between the *claim* and the *forum* that allows for the exercise of jurisdiction." *Johnson v. Johnson*, 2010 UT 28, ¶ 9, 234 P.3d 1100 (emphases added) (internal quotation marks omitted). It has nothing to do with the case number assigned to a particular pleading. Assignment of case numbers is a ministerial duty undertaken by the clerks of court for the convenience of the court; it does not confer upon nor deprive the court of constitutional or statutory authority to decide a case. *See Schaab v. State*, 33 So. 3d 763, 765–66 (Fla. Dist. Ct. App. 2010) ("The clerk's assignment of a misdemeanor case number did not affect the status of the contempt as a circuit court matter over which the court had jurisdiction. [F]ile numbers are merely an administrative convenience for the clerk but

---

[4] (...continued)
might be in "tension" on this point, and that we may need to articulate a doctrine that "discriminate[s] in a principled way between postconviction uses of [rule 60(b)(2)] that are legitimate and those that are forbidden." *Kell*, 2012 UT 25, ¶ 25.

However, all this goes to the merits of Mr. Carter's 60(b) motion. Because we conclude that the motion was not timely filed, we decline to consider its merits, and the resolution of this issue will wait until a timely 60(b) motion presents it.

[5] The Utah Constitution provides that "[t]he district court shall have original jurisdiction in all matters except as limited by this constitution or by statute." UTAH CONST. art. VIII, § 5. Consistent with this constitutional provision, section 78A-5-102(1) of the Utah Code grants district courts "original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." And section 78B-9-104(1) directs parties to file post-conviction actions "in the district court of original jurisdiction for post-conviction relief."

not a statutory prerequisite for filing by the parties to the action." (alteration in original) (internal quotation marks omitted)). The jurisdictional question is resolved by looking at the claim for relief and ascertaining whether the forum in which the claim is brought has authority to decide it.

¶21   In this case, it is undisputed that the district court had authority to hear a new PCRA petition from Mr. Carter, so the only question is whether Mr. Carter's filing was in fact a new PCRA petition. To determine whether the filing was a new petition, we investigate not the subjective intentions of Carter's counsel, but the legal substance of the petition as a whole. The relevant question is this: does the petition state a claim that the district court can hear as a new PCRA petition? If so, the district court must take jurisdiction of the claim, regardless of any confusion in the caption, in the case number, or in counsel's intentions.

¶22   Judged by the content and substance of the petition as a whole, Mr. Carter's filing clearly states a claim that the district court could hear as a new petition. It follows the standard form of a new postconviction petition, beginning with a thirty-page summary of the criminal proceedings being challenged and Mr. Carter's myriad prior appeals and collateral attacks. Notably, Mr. Carter's "Second Petition for State Post-Conviction Relief" is listed as denied and pending appeal. When the petition states its own grounds for relief, it lists three theories, all of them based on the Tovars' recent affidavits. None of them relate in any obvious way to the claims raised in the Second Petition. We conclude that Mr. Carter is correct. The Third Petition cannot reasonably be read as anything other than what its caption describes: a third petition.

¶23   In sum, we conclude that the district court's refusal to take jurisdiction of the Third Petition was erroneous.[6] The clerk's incorrect assignment of the Second Petition's case number to the Third Petition was not a jurisdictional defect but a clerical error, and one that the court should have corrected. We therefore remand Mr. Carter's Third Petition and direct the district court to assign it a new case number. And, given our holding that the district court has jurisdiction over the Third Petition, its original filing date of March 27, 2012, is the relevant filing date for all purposes.

---

[6] In so holding, of course, we do not express any opinion on the merits of Mr. Carter's Third Petition, or on whether it can survive the PCRA's various procedural bars. We merely hold that the district court erred in concluding it could not hear the petition at all.

**CONCLUSION**

¶24    We affirm the district court's denial of Mr. Carter's rule 60(b) motion on grounds that it was untimely. But we reverse the court's dismissal of the Third Petition for lack of jurisdiction. We hold that the district court had subject matter jurisdiction over Mr. Carter's Third Petition regardless of the case number assigned to it. We remand this case to the district court with instructions to assign Mr. Carter's Third Petition a new case number.

————————