*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 53**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STEVEN DOWNS,
*Petitioner,*

*v.*

BRYAN THOMPSON, BOARD OF COUNTY COMMISSIONERS OF UTAH
COUNTY, and UTAH COUNTY,
*Respondents.*

No. 20180696
Filed August 27, 2019

On Certification from the
United States District Court for the District of Utah
The Honorable Dale A. Kimball
Case No. 2:17-cv-00330

Attorneys:

J. Brady Brammer, Pleasant Grove, Steven C. Earl, Orem, for
petitioner

Benson L. Hathaway, Jr., Jackie Bosshardt, Ryan R. Beckstrom, Salt
Lake City, for respondents

JUSTICE HIMONAS authored the opinion of the Court in which CHIEF
JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE, and
JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1　The United States District Court for the District of Utah certified three questions to be answered by this court: (1) "Does a Utah [state] district court have jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied pursuant to Utah Code Section 20A-11-1205?"; (2) "Does the term 'ballot proposition' as used in Utah Code Section 20A-11-1205(1) include a referendum during the period of time before its sponsors have obtained the requisite number of signatures on the referendum

petition?"; and (3) "Does the term 'ballot proposition' as used in Utah Code Section 20A-11-1205(1) include a referendum during the signature gathering phase if the challenged local government action is later found to be administrative in nature and therefore not subject to a referendum?"

¶2   With respect to question one, we answer that a Utah state district court does not have appellate jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied under Utah Code section 20A-11-1205. In doing so, we are obligated to clarify the difference between a district court's original jurisdiction and its appellate jurisdiction—specifically the source and authorization of these powers. And we are also obligated to note that the certified question does not implicate, and therefore we do not opine on, whether the Utah County Board of Commissioners' review process is constitutional, a query about which we harbor some serious reservations.

¶3   We answer the second question by defining a "ballot proposition" as used in Utah Code section 20A-11-1205(1)(b) to encompass the entirety of the referendum process, including the period of time before sponsors have obtained the requisite number of signatures on the referendum petition.

¶4   Lastly, in response to the third question, we answer that a "ballot proposition" as used in Utah Code section 20A-11-1205(1)(b) encompasses the entirety of the referendum process—including the signature gathering phase—even if the challenged local government action is later found to be administrative in nature and therefore ultimately not subject to a referendum.

## BACKGROUND

¶5 In April 2016, Orem City passed Resolution No. R-2016-0012, which authorized the mayor of Orem to sign a lease agreement and an interlocal cooperation agreement in connection with the implementation of the Utah Transit Authority's Bus Rapid Transit (BRT) program.[1] In response, several citizens filed a petition for referendum against the resolution. The citizens circulated referendum packets and collected the necessary signatures for a referendum before submitting their petition to the City Recorder. The City Recorder rejected the referendum petition because the City Recorder believed Resolution No. R-2016-0012 concerned an

---

[1] Orem had already approved the BRT program through resolutions passed in 2008 and 2015.

administrative action and was therefore not subject to a referendum. The City Recorder's decision was upheld by the Fourth District Court. As a result, the referendum vote sought through the petition was never put on the ballot.

¶6    Steven Downs, in his role as the Public Information Officer for Orem, circulated an email—using his work email account—announcing a public meeting to discuss the BRT program with the entities charged with its implementation. This email was sent after the petition had been submitted but before all necessary signatures had been gathered. The email contained only information from opponents of the BRT referendum, invited recipients to attend a meeting held by opponents of the referendum, distributed a link to an anti-petition website, and did not contain any information summarizing arguments in favor of the BRT project. In response, Bryan Thompson, the Utah County Clerk, fined Downs $250 for violating the Political Activities of Public Entities Act—specifically, Utah Code section 20A-11-1205(1)(b), which stated that "a person may not send an email using the email of a public entity . . . to advocate for or against a ballot proposition."[2]

¶7    Downs demanded a review of the fine before an impartial tribunal. In response, Utah County passed chapter 31 of the Utah County Code, which delegates the review of any civil fine issued under the Political Activities of Public Entities Act to the County Commission, and purports to make any decision by the Board of Commissioners appealable to the Fourth District Court in Utah County. After the Board of Commissioners voted to uphold the fine, Downs filed a petition in the Fourth District Court challenging the ruling on several grounds. Respondents removed the case to federal court. The federal court found that Downs had standing to bring his claim in federal court but reserved ruling on a number of motions until receiving guidance on the three questions certified to this court.

¶8    We have original jurisdiction to answer these questions of state law under Utah Code section 78A-3-102(1).

---

    [2] While this case has been pending, Utah Code section 20A-11-1205(1)(b) has been amended to state that "a person may not send an email using the email of a public entity . . . to advocate for or against a proposed initiative, initiative, proposed referendum, or referendum." Throughout this opinion we refer to section 20A-11-1205(1)(b) and any other sections of the Utah Code as they existed at the time Downs was fined.

**STANDARD OF REVIEW**

¶9   "A certified question from the federal district court does not present us with a decision to affirm or reverse a lower court's decision; as such, traditional standards of review do not apply." *U.S. Fid. & Guarantee Co. v. U.S. Sports Specialty Ass'n*, 2012 UT 3, ¶ 9, 270 P.3d 464 (citation omitted) (internal quotation marks omitted). "Accordingly, we merely answer the question presented, leaving resolution of the parties' competing claims and arguments . . . up to the federal courts, which of course retain jurisdiction to decide [the] case." *Garfield Cty. v. United States*, 2017 UT 41, ¶ 6, 424 P.3d 46 (alterations in original) (citation omitted) (internal quotation marks omitted).

**ANALYSIS**

I. UTAH CODE SECTION 20A-11-1205 DOES NOT CONVEY APPELLATE JURISDICTION ON STATE DISTRICT COURTS

¶10   The first question certified to this court is narrow in scope: "Does a Utah [state] district court have jurisdiction to review the Utah County Board of Commissioners' decision upholding a fine levied pursuant to Utah Code Section 20A-11-1205?" Or in other words, does a state district court have jurisdiction to conduct an appellate review of the Utah County Board of Commissioners' decision to uphold a fine levied by a county clerk? It does not. But we make clear that this statement of law does not implicate or abridge the wide scope and authorization the district courts maintain under their grant of original jurisdiction.

¶11 We have stated that "[i]t is the essential criterion of appellate jurisdiction[] that it *revises and corrects the proceedings in a cause already instituted*[] *and does not create that cause.*" *State v. Johnson*, 114 P.2d 1034, 1037 (Utah 1941) (citation omitted) (internal quotation marks omitted), *overruled in part on other grounds by Boyer v. Larson*, 433 P.2d 1015 (Utah 1967). In this case, the "proceeding [] in a cause already instituted" is the Utah County Board of Commissioners' decision to uphold Downs's fine. *Id.*

¶12   In Utah, jurisdiction to decide a case "derives from the Utah Constitution, state statute, or a combination of the two." *Carter v. State*, 2015 UT 38, ¶ 19, 345 P.3d 737. And the Utah Constitution makes clear that "[t]he district court shall have appellate jurisdiction *as provided by statute*." UTAH CONST. art. VIII, § 5 (emphasis added).

¶13 Chapter 31 of the Utah County Code provides that an appeal of the Utah County Board of Commissioners' decision can be taken in a state district court. UTAH COUNTY CODE § 31-1-5. But

section 31-1-5 is a county ordinance; a county ordinance is not a state statute. Therefore, the Utah County Code cannot convey appellate jurisdiction to the district court or regulate procedures for an appeal. Section 31-1-5 pretends to powers the county does not have. Put succinctly, counties do not have the authority to grant appellate jurisdiction to state district courts.[3]

¶14 This statement of law is necessarily narrow and pertains only to grants of appellate jurisdiction by statute. The district court retains original jurisdiction "in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." UTAH CODE § 78A-5-102(1). Additionally, Utah Code section 78B-6-401(1) affirmatively provides that "[e]ach district court has the power to issue declaratory judgments determining rights, status, and other legal relations within its respective jurisdiction." We acknowledge that these broad jurisdictional grants beg an answer to the question as to whether the county ordinance is constitutional. Because we are not asked to resolve this question, we decline to comment on the matter. We are simply asked whether state district courts have jurisdiction to *review* the decision of the Utah County Board of Commissioners. It is sufficient to say that a county lacks the ability to

_____

[3] There is also no statutory grant of appellate jurisdiction located in the Utah Code that would vest district courts with appellate jurisdiction over fines imposed under this county ordinance. Utah Code section 78A-5-102 articulates multiple grants of appellate jurisdiction to the district court. The only potentially relevant section, section 7, states that the "district court has jurisdiction to review . . . municipal administrative proceedings in accordance with Section 10-3-703.7." UTAH CODE § 78A-5-102(7)(b). Utah Code section 10-3-703.7, in turn, cabins this review by referring exclusively to proceedings established by a "municipality." *Id*. § 10-3-703.7(1). For the purposes of this section, a municipality is defined as "(a) a city of the first class, city of the second class, city of the third class, city of the fourth class, city of the fifth class; (b) a town . . .; or (c) a metro township. . . ." *Id*. § 10-1-104(5)(a)–(c). Notably, there is no mention of a county. Additionally, article XI section 1 of the Utah Constitution recognizes counties of the State of Utah "as legal subdivisions of this State." This makes clear that the term "county" is a legally distinct term whose meaning is not to be merged with that of cities or townships. There is therefore no grant of appellate jurisdiction under Utah Code section 78A-5-102 that would permit a district court to conduct an appellate review of a county commission's decision.

create appellate jurisdiction via a county ordinance. We say nothing as relates to the district court's original jurisdiction.

## II. THE TERM "BALLOT PROPOSITION" AS USED IN UTAH CODE SECTION 20A-11-1205(1) INCLUDES THE ENTIRE REFERENDUM PROCESS

¶15  The next question certified to us by the federal district court involves reading several statutory provisions in conjunction with each other: "Does the term 'ballot proposition' as used in Utah Code Section 20A-11-1205(1) include a referendum during the period of time before its sponsors have obtained the requisite number of signatures on the referendum petition?" We answer that it does.

¶16 Downs was fined for violating Utah Code section 20A-11-1205(1)(b), which prohibits a person from sending "an email using the email of a public entity . . . to advocate for or against a ballot proposition." Although section 1205 does not define "ballot proposition," the term is defined in both Utah Code section 20A-1-102(5) of the Election Code and Utah Code section 20A-11-1202(2) of the Political Activities of Public Entities Act—the act Downs is alleged to have violated.

¶17  Our primary task when interpreting these provisions is to give effect to the intent of the legislature. *Harold Selman, Inc. v. Box Elder Cty.*, 2011 UT 18, ¶ 18, 251 P.3d 804. We "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *Boyle v. Christensen*, 2011 UT 20, ¶ 27, 251 P.3d 810 (citation omitted) (internal quotation marks omitted). Additionally, "[w]herever possible, we give effect to every word of a statute, avoiding [a]ny interpretation which renders parts or words in a statute inoperative or superfluous." *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 (second alteration in original) (internal quotation marks omitted) (citing *State v. Arave*, 2011 UT 84, ¶ 28, 268 P.3d 163).

¶18  It is admittedly difficult to interpret the language in section 20A-11-1202(2). Specifically, when section 20A-11-1202(2) defines "ballot proposition" as "constitutional amendments, initiatives, referenda, judicial retention questions, opinion questions, bond approvals, or other questions submitted to the voters for their approval or rejection," does the phrase "submitted to the voters for their approval or rejection" apply only to "other questions" or to every term in the preceding list? This is a familiar problem. The two most relevant canons of statutory interpretation, the last-antecedent canon and the series-qualifier canon, often compete with each other. But context guides which canons we apply.

¶19 The rule of the last antecedent is a canon of statutory interpretation stating that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 136 S. Ct. 958, 962 (2016) (alteration in original) (citation omitted) (internal quotation marks omitted). In *Lockhart*, the United States Supreme Court analyzed 18 U.S.C. § 2252(b)(2), which prescribes a mandatory sentencing range for persons with a prior conviction "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." Relying on the last-antecedent canon, the Court held that "'involving a minor or ward' modifies only 'abusive sexual conduct,' the antecedent immediately preceding it." *Id.* at 962. In this case, an application of the last-antecedent canon to section 20A-11-1202(2) would mean that "submitted to the voters" would apply only to "other questions."

¶20 The series-qualifier canon, on the other hand, provides that, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." ANTONIN SCALIA & BRYAN A. GARNER, *Reading Law: The Interpretation of Legal Texts* 147 (2012). The classic example involves the text of the Fourth Amendment to the United States Constitution. The relevant text reads "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Applying the series-qualifier canon, we and others read this text as barring both unreasonable searches and unreasonable seizures. In other words, both nouns in the series are qualified by the preceding adjective "unreasonable." This canon can also be applied when, as with Utah Code section 20A-11-1202(2), the modifier is positioned after what it modifies. To apply this canon to section 20A-11-1202(2) would mean that "submitted to the voters" modifies the entire list of preceding terms, not just "other questions."

¶21 We have applied this canon before and said that "[q]ualifying words and phrases are generally regarded as applying to the immediately preceding words, rather than to more remote ones." *LPI Servs. v. McGee*, 2009 UT 41, ¶ 15, 215 P.3d 135 (alteration in original) (citation omitted) (internal quotation marks omitted). This is of course not an iron-clad rule as we have also said "the rule of the last antecedent does not mandate that qualifying rules and phrases *only* apply to the immediately preceding words; rather[,] when given a choice between the immediately preceding words and more remote words, we prefer the words closer in proximity." *Id.* Such a choice is given us here and context makes clear that

application of the last-antecedent canon yields the better reading of the statute.

¶22 Reading section 20A-11-1202(2) in context necessitates that we apply the last-antecedent canon. We read the phrase "or other questions submitted to the voters for their approval or rejection" in Utah Code section 20A-11-1202(2) as a catchall addition to the statute's text, meant by the legislature to include any other type of question, not necessarily included by name in the preceding list, submitted to voters. "[O]ther questions submitted to the voters" merely reflects the legislature's desire to include any categories of questions submitted to the voters that were not explicitly included in the list in section 1202(2). This reading—an application of the last-antecedent canon—gives meaning to the entire text, as every term in the preceding list—constitutional amendments, initiatives, referenda, judicial retention questions, opinion questions, bond approvals—is already something that ends up submitted to the voters. In other words, "submitted to the voters" would be entirely superfluous as applied to all the preceding terms in the list because all of those things are already submitted to the voters. Therefore, in context, the better reading of the statute is reached through the use of the last-antecedent canon.

¶23 Having determined that the term we must interpret is "referenda"—as opposed to "referenda submitted to the voters"—it seems obvious to us that a referendum encompasses the totality of the referendum process. The Election Code defines a referendum as "a *process* by which a law passed by the Legislature or by a local legislative body is submitted or referred to the voters for their approval or rejection." UTAH CODE § 20A-7-101(18) (emphasis added)[4]; *see also Referendum*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The *process* of referring a state legislative act, a state constitutional amendment, or an important public issue to the people for final approval by popular vote." (emphasis added)). Therefore, to speak of a referendum is to speak of the entire ordered process by which citizens submit questions to voters—a process initiated by the filing of an application with the local clerk. *See Tobias v. S. Jordan City Recorder*, 972 P.2d 373, 374 (Utah 1998) ("Sponsors who wish to circulate a referenda petition start the process by filing an application with the 'local clerk' . . . ."). Indeed, a close reading of Utah Code section 20A-7-609(2)(a) confirms that the legislature has

---

[4] Utah Code section 20A-7-101(18) has since been renumbered as section 20A-7-101(20). The text of the two provisions is identical.

also understood referenda to be a process: "[T]he county clerk shall ensure that county referenda that have qualified for the ballot appear on the next regular general election ballot." UTAH CODE § 20A-7-609(2)(a). This statutory language marks a clear delineation between referenda that have qualified for a ballot and referenda that have not—but *both are still referenda.*[5] A referendum is the total process, not just the question that is ultimately submitted to a democratic vote. Therefore, the term "ballot proposition" as used in Utah Code section 20A-11-1205(1) includes all phases of the referendum process, including the signature gathering phase.

## III. A "BALLOT PROPOSITION" AS USED IN UTAH CODE SECTION 20A-11-1205(1) INCLUDES THE ENTIRETY OF THE REFERENDUM PROCESS EVEN IF THE CHALLENGED LOCAL GOVERNMENT ACTION IS LATER FOUND TO BE ADMINISTRATIVE IN NATURE AND THEREFORE NOT SUBJECT TO A REFERENDUM

¶24 The last question certified by the federal district court asks us whether "the term 'ballot proposition' as used in Utah Code Section 20A-11-1205(1) includes a referendum during the signature gathering phase if the challenged local government action is later found to be administrative in nature and therefore not subject to a referendum." Because we define a referendum as the entire referendum process, it logically follows that an attempted referendum process that is later found to pertain to an administrative action—and is therefore not properly subject to a referendum—is still a referendum and therefore a "ballot proposition" as used in Utah Code section 20A-11-1205(1).

---

[5] Although we have never explicitly said this with regard to referenda, we have articulated this total process based definition in regards to initiative processes:

> The voters' right to initiative does not commence at the ballot box: The voters' right to legislate via initiative includes signing a petition to get the proposed initiative on the ballot. Signing a petition is inextricably connected to the voters' right to vote on an initiative because it serves a gatekeeping function to the right to vote. Accordingly, [t]he use of . . . petitions . . . to obtain a place on the [state's] ballot is an integral part of [its] elective system.

*Gallivan v. Walker*, 2002 UT 89, ¶ 26, 54 P.3d 1069 (alterations in original) (citation omitted) (internal quotation marks omitted).

¶25 "Article VI, section 1 of the Utah Constitution vests 'Legislative power' in 'the people of the State of Utah' and provides for its exercise through ballot initiatives and referenda." *Carter v. Lehi City*, 2012 UT 2, ¶ 17, 269 P.3d 141 (quoting UTAH CONST. art VI, § 1). However, the legislative power may not trammel the executive power and there are limits to the people's power of initiative and referenda. *Id.* An initiative or referendum is only permissible if it is legislative in nature and is conversely forbidden if it is administrative. *See*, *e.g.*, *Baker v. Carlson*, 2018 UT 59, 437 P.3d 333. "This legislative/administrative distinction is a reflection of our constitution's explicit and strict separation of powers, which is set forth in article V." *Carter*, 2012 UT 2, ¶ 17.

¶26 Under Utah Code section 20A-7-602(1), "[p]ersons wishing to circulate a referendum petition shall file an application with the local clerk."[6] The petition shall include "at least five sponsors" and explain what law or laws are challenged by the referendum petition. *Id.* Utah Code section 20A-7-604(2) mandates the duties of the local clerk: "Within five days after the day on which a local clerk receives an application that complies with the requirements of Section 20A-7-602, the local clerk shall furnish to the sponsors (a) five copies of the referendum petition; and (b) five signature sheets."[7] At this stage in the referendum process, the local clerk has no discretion to refuse to supply citizens with the packets for a referendum petition or to make an authoritative determination as to whether the petition may ultimately reach the ballot.[8]

---

[6] Utah Code section 20A-7-602(1) has since been amended to state: "An eligible voter wishing to circulate a referendum petition shall file an application with the local clerk."

[7] Utah Code section 20A-7-604(2) has since been amended to read: "Within five days after the day on which a county, city, town, metro township, or court determines, in accordance with Section 20A-7-602.7, that a proposed referendum is legally referable to voters, the local clerk shall furnish to the sponsors a copy of the referendum petition and a signature sheet."

[8] Upon receipt of the citizens' application in this case, the Orem City Attorney advised them that the 2016 Resolution was an administrative act and would therefore not be referable. But, as required by law, the local clerk furnished the citizens with referendum packets and the process continued.

¶27 The local clerk's discretion to reject a referendum petition does not vest until the requisite number of signatures has been gathered and the completed application is submitted for approval. As we said in *Taylor v. South. Jordan City Recorder*, "Any determination [by the local clerk] of whether the subject matter is appropriate for the initiative process is proper only after the petition has been issued, completed, and returned." 972 P.2d 423, 424 (Utah 1998). In this case, Orem rejected the citizens' completed petition because, in its estimation, the 2016 Resolution concerned an administrative action and was therefore not referable. But any decision made by the local clerk on the administrative/legislative nature of the subject of a referendum is subject to review by the courts. *See*, *e.g.*, *Baker*, 2018 UT 59, ¶ 7 (citizens seeking judicial review of local clerk's determination that city's action was administrative in nature and therefore not referable).[9]

¶28 We take the time to recount all the steps in the referendum process because it is important to our answer to the certified question. As we have just detailed, the entire referendum process is part and parcel to the definition of "referendum." Indeed, a referendum cannot exist in the absence of the many necessary steps taken along the way. The fact that a referendum ultimately turns out to be a doomed referendum does not alter its fundamental character throughout the process. We see no prudence in creating a twilight zone in which an action taken by citizens, in full compliance with the statutory guidelines for referenda, is not considered a referendum until later definitively proven to be legislative in nature. The opposite is the case. A referendum may be destined to ultimately fail because it pertains to an administrative action, but it nonetheless remains a referendum at every stage along the way and, therefore, a referendum in the signature gathering phase is a "ballot proposition" under Utah Code section 20A-2-1205(1).

## CONCLUSION

¶29 We state as matters of law in answer to the federal district court's certified questions that: (1) without saying anything about Utah state district courts' original jurisdiction, Utah state district courts do not have appellate jurisdiction to review the decision of the Utah County Board of Commissioners upholding a fine levied under

---

[9] In this case, no judicial determination has been made as to whether Resolution 2016-0012 is administrative or legislative in nature.

Utah Code section 20A-11-1205; (2) the term "ballot proposition" as used in Utah Code section 20A-11-1205(1) includes the entire referendum process and therefore encompasses the period of time before a referendum's sponsors have obtained the requisite number of signatures on the referendum petition; and (3) the term "ballot proposition" as used in Utah Code section 20A-11-1205(1) includes the signature gathering phase of the referendum process, regardless of whether the challenged local government action is later found to be administrative in nature and therefore not subject to a referendum.