*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 27**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SALT LAKE COUNTY, DUCHESNE COUNTY, UINTAH COUNTY, WASHINGTON COUNTY, and WEBER COUNTY, political subdivisions of the State of Utah,
*Appellants,*

*v.*

STATE OF UTAH, DELTA AIR LINES, INC., and SKYWEST AIRLINES, INC.,
*Appellees.*

No. 20180586
Heard May 6, 2019
Filed May 18, 2020

On Direct Appeal

Third District, Salt Lake
The Honorable Kara Pettit
No. 170904525

Attorneys:

Sim Gill, Darcy M. Goddard, Timothy Bodily, Bradley C. Johnson, Jacque M. Ramos, Salt Lake City, for appellant Salt Lake County

Tyler C. Allred, Duchesne, for appellant Duchesne County

Jonathan A. Stearmer, Vernal, for appellant Uintah County

Eric W. Clarke, Brian R. Graf, St. George, for appellant Washington County

Courtlan P. Erickson, Ogden, for appellant Weber County

David N. Wolf, Laron Lind, Andrew Dymek, Salt Lake City, for appellee State of Utah

Gary R. Thorup, James D. Gilson, David L. Arrington, Cole P. Crowther, Salt Lake City, for appellees Delta Air Lines, Inc. and SkyWest Airlines, Inc.

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

---

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    Salt Lake, Duchesne, Uintah, Washington, and Weber Counties (Counties) filed a lawsuit against the State of Utah, challenging several provisions of the Utah Tax Code as unconstitutional (Challenged laws).[1] The district court dismissed two of the Counties' claims as unripe because the allegations in their complaint did not show they had been adversely affected by the tax code provision at issue. The court then dismissed the Counties' remaining claims for a failure to exhaust administrative remedies because the Counties had not first filed an appeal of a tax assessment with the Utah State Tax Commission. Because none of the Counties' claims presents a justiciable controversy, we affirm the district court's decision.

¶2    The district court properly dismissed the Counties' claims on ripeness grounds. Under our ripeness doctrine, courts should resolve legal issues only where the resulting legal rule can be applied to a specific set of facts, thereby resolving a specific controversy. Although the Counties cite evidence outside their pleadings to suggest that the tax code provision at issue had already adversely affected them, they have not incorporated this evidence into their complaint. So their complaint is facially insufficient to show that the dismissed claims were ripe. Accordingly, we affirm the district court's dismissal of the two claims dismissed on ripeness grounds.

¶3    Further, we affirm the district court's dismissal of the Counties' remaining claims because those claims are best viewed as requests for an advisory opinion—something we do not provide. According to the Counties, their claims "do not arise from a specific tax assessment challenged, unchallenged, or forgone." And they do not "depend upon averments of particular assessments to maintain this action." Instead, their claims "are structurally based and stem from the Challenged laws' enactment and unconstitutional

---

[1] Delta Air Lines, Inc. and SkyWest Airlines, Inc. (Airlines) intervened as defendants in the district court.

assessment[-]mandated methodology." In other words, the Counties' purpose in turning to the judiciary in this case is to obtain a judicial declaration that the Challenged laws are unconstitutional in the abstract. Because we have "no power to decide abstract questions or to render declaratory judgments[] in the absence of an actual controversy directly involving rights,"[2] we affirm the district court's dismissal of the Counties' remaining claims.

## Background

¶4 Generally, an individual's property tax obligation is determined by the county assessor for the county in which the person's property is located. But where a business operates in more than one county, the Utah Tax Code provides that its property tax obligation is determined by a central assessor, the state tax commission. In 2015, the Utah legislature amended portions of Utah's tax code that establish the methodology for determining the property tax obligations of airlines operating within the state. Three of the amended tax provisions are relevant in this case.

¶5 First, the legislature enacted Utah Code section 59-2-201(4) (Valuation law). The Valuation law provides that the value of an aircraft is based on the Airliner Price Guide, an airline industry pricing publication.[3] But the statute says that the tax commission may use an alternative valuation method where it has "clear and convincing evidence that the aircraft values reflected in the aircraft pricing guide do not reasonably reflect fair market value of the aircraft."[4] Additionally, the Valuation law provides for an incremental downward "fleet adjustment" in the value of every aircraft, after the first three, owned by an airline.[5]

¶6 The Counties brought a number of facial and as-applied challenges to the constitutionality of the Valuation law. In the first and second claims of their complaint, they argue that the Valuation law's "clear and convincing evidence" standard violates article XIII, section 2(1) of the Utah Constitution, which states that "all tangible property in the State that is not exempt" shall be "assessed at a uniform and equal rate in proportion to its fair market value"

---

[2] *Univ. of Utah v. Indus. Comm'n of Utah*, 229 P. 1103, 1104 (Utah 1924).

[3] UTAH CODE § 59-2-201(4)(b)(ii).

[4] *Id.* § 59-2-201(4)(d).

[5] *Id.* § 59-2-201(4)(c).

(uniformity clause). The Counties claim the "clear and convincing evidence" standard violates the uniformity clause because, where the values listed in the Airliner Price Guide differ from fair market value, it creates a higher bar for assessing property at a fair market value than is established for other types of property. The Counties allege that for other types of property, the tax commission "must only meet a preponderance of the evidence standard in establishing fair market value." They also argue that it prevents the tax commission from determining the fair market value of aircraft property.

¶7    In the Counties' third and fourth claims, they argue that the Valuation law's "fleet adjustment provision" violates the uniformity clause because it provides for a property tax discount applicable only to airlines, and because it prevents the tax commission from assessing the value of aircraft at fair market value.

¶8    Finally, in the Counties' fifth and sixth claims, they challenge the Valuation law for violating the constitution's delegation of authority over tax assessments to the tax commission. They claim that by requiring the tax commission to use the valuations provided in outside pricing guides, the legislature has unconstitutionally delegated tax commission authority to the publishers of those pricing guides. They also argue that the Valuation law violates the constitution's separation-of-powers provisions because it impermissibly allows the legislature to exert authority over an executive agency's responsibility — the responsibility of assessing property tax obligations.

¶9    The district court dismissed all of the Counties' claims related to the Valuation law because "administrative appeals that remain pending" could "obviate the need to reach some of the as-applied constitutional questions raised by the Counties."[6] This was so, the court explained, because the tax commission could, "upon clear and convincing evidence," "apply an alternative method for valuation of aircraft." And, according to the court, the result of the tax commission proceedings could be a property tax assessment that corresponds with the property's "fair market value," in which case the Valuation law would not harm the Counties. The court also found that "the determination of fair

---

[6] All the dismissals at issue in this case were made without prejudice.

market value and whether the airline property is undervalued under the Valuation . . . Law[] are factual findings that underlie the Counties' constitutional claims," so tax commission proceedings would "be useful to better frame the constitutional claims that may not be obviated by the Commission's determinations." The Counties appeal this determination as to their uniformity clause claim regarding the "clear and convincing evidence" standard (first claim), their uniformity clause claim regarding the "fleet adjustment" provision (third claim), and their separation-of-powers claim (sixth claim).[7]

¶10 The legislature also enacted Utah Code section 59-2-804 (Allocation law). The Allocation law provides a formula for determining an airline's property tax obligation to the State of Utah.[8] Because most aircraft do not remain permanently in any one state, Utah imposes property taxes only for the time in which the aircraft is in the state. This tax obligation is calculated as a percentage of the entire value of the airline's property according to the formula provided by the Allocation law.

¶11 In their seventh and eighth claims, the Counties argue that the Allocation law violates article XIII's uniformity clause and the provision mandating that property tax should be assessed to any non-exempt property. They argue that it is unconstitutional because, if the Allocation law were applied uniformly by every state, a certain percentage of the value of an airline's property would escape taxation.

¶12 As it did with the Valuation-law-related claims, the district court dismissed the Counties' Allocation-law-related claims for a failure to exhaust administrative remedies. The court held that "the determination of fair market value and whether the airline property is undervalued under the . . . Allocation Law[] are factual findings that underlie the Counties' constitutional claims." The

---

[7] The Counties have not appealed the dismissal of their fair-market-value-clause claims regarding the "clear and convincing evidence" standard (second claim) or regarding the "fleet adjustment" provision (fourth claim). Although the Counties do not explain why these claims were not appealed, we assume it is because they would undoubtedly require factual findings regarding the fair market value of specific property — a task better left for an administrative proceeding.

[8] *Id.* § 59-2-804.

court further held that the tax commission should be allowed to make these findings in an administrative proceeding because it would "be useful to frame the constitutional claims." Specifically, the court explained that tax commission findings "regarding allocations using the [formula provided by the Allocation law] w[ould] be useful to frame the constitutional claims regarding the Allocation Law." Finally, the court noted that the Counties were already pursuing appeals of the tax commission's determinations, so "inconsistent findings could result if both the Commission and t[he] Court rendered factual findings regarding fair market value of the airlines' property in simultaneous proceedings." The Counties appeal this determination as to their seventh and eighth claims.

¶13  Lastly, the legislature enacted Utah Code section 59-2-1007 (Threshold law). The Threshold law bars counties from challenging a tax commission's property tax assessment unless a county "reasonably believes" the tax commission's assessment has undervalued property by at least 50 percent.[9] In the Counties' ninth and tenth claims, they challenged the Threshold law under the open courts provision of the Utah Constitution and article XIII's uniformity clause. But, noting that the Counties' complaint does "not identif[y] a specific instance in which they were denied the opportunity to pursue an appeal of an airline assessment under the . . . Threshold Law," the court dismissed these claims as unripe. The Counties appeal this ripeness determination as to their open courts claim (ninth claim) but not as to their uniformity clause claim (tenth claim).[10] We have jurisdiction over this appeal pursuant to Utah Code section 78A-3-102(3)(j).

**Standard of Review**

¶14 We are asked to review a district court's dismissal of several claims under rules 12(b)(1) and 12(b)(3) of the Utah Rules

---

[9] *Id.* § 59-2-1007(2)(b).

[10] The Counties also brought an eleventh claim in their complaint, which challenged the Valuation, Allocation, and Threshold laws as violating article I, section 24 of the Utah Constitution, and the Fourteenth Amendment of the United States Constitution. This claim, as it relates to the Valuation and Allocation laws, was dismissed without prejudice for a failure to exhaust administrative remedies, and, as it relates to the Threshold law, it was dismissed without prejudice as unripe.

of Civil Procedure. A dismissal made under either of these rules "presents a question of law that we review for correctness."[11]

## Analysis

¶15 We must determine whether the district court erred in dismissing one of the Counties' claims as unripe and several other claims for a failure to exhaust administrative remedies. We hold that neither of the court's determinations was in error.

### I. We Affirm the District Court's Ripeness Determination

¶16 The Counties argue that the district court erred in dismissing, on ripeness grounds, their claim challenging the Threshold law. They argue that their challenge of the Threshold law is ripe because it is certain that the Threshold law will deprive the Counties of an opportunity to challenge the tax commission's property tax assessment. And they argue that the district court erred in excluding from its consideration matters outside the pleadings because those matters established that their challenge of the Threshold law is ripe. We disagree.

*A. The Counties' pleadings are insufficient to establish that their challenge of the Threshold law is ripe*

¶17 The Counties argue that, because the Threshold law will inevitably bar a challenge to a tax assessment, their challenge of the law is ripe. But we disagree because the Counties failed to plead that their right to challenge a tax assessment had been violated pursuant to the Threshold law, or that they intended to challenge a tax assessment that would be barred by the Threshold law.

¶18 The "[r]ipeness doctrine is invoked to determine whether a dispute has yet matured to a point that warrants a decision."[12] The doctrine rests upon the principle "that courts should decide only 'a real, substantial controversy,' not a mere hypothetical

---

[11] *Osguthorpe v. Wolf Mountain Resorts, L.C.*, 2010 UT 29, ¶ 10, 232 P.3d 999 ("A district court's grant of a motion to dismiss based upon the allegations in the plaintiff's complaint[] presents a question of law that we review for correctness." (alteration in original) (citation omitted)).

[12] 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3532 (3d ed. 2018).

question."[13] There are a number of policies underlying the doctrine. These include "block[ing] the court from rendering advisory opinions on matters that may not impact the parties to a case," "requiring a clear factual record prior to adjudication," "facilitat[ing] informed decisions that fit the circumstances of individual cases," and "prevent[ing] the court from intruding on legislative functions by unnecessarily ruling on sensitive constitutional questions."[14] These policies underlie our ripeness test.

¶19 We have stated that "[i]ssues are ripe for adjudication where it appears 'there is an actual controversy, or that there is a substantial likelihood that one will develop so that the *adjudication will serve a useful purpose in resolving or avoiding* controversy or possible litigation.'"[15] By focusing a court's attention on whether

---

[13] *Id.* § 3532.2 (internal quotation marks omitted). Because of the ripeness doctrine's aversion to resolving merely hypothetical disputes, the doctrine is often discussed in connection with the rule against issuing advisory opinions. And the policies underlying the ripeness doctrine also underlie the advisory opinion rule.

[14] *Carter v. Lehi City*, 2012 UT 2, ¶ 93, 269 P.3d 141. These policies are substantially similar to the policies underlying the federal ripeness doctrine. According to Wright and Miller, these include the belief that "[u]nnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance," and that defendants "should not be forced to bear the burdens of litigation without substantial justification" or to bear the burdens of defending against "hypothetical possibilities rather than immediate facts." WRIGHT & MILLER, *supra* ¶ 18 n.12, at § 3532.1. But perhaps the most important policy reason for the ripeness doctrine is that judicial decisions involve "lawmaking," and "unnecessary lawmaking should be avoided, both as a matter of defining the proper role of the judiciary in society and as a matter of reducing the risk that premature litigation will lead to ill-advised adjudication." *Id.*

[15] *Salt Lake Cty. Comm'n v. Salt Lake Cty. Att'y*, 1999 UT 73, ¶ 12, 985 P.2d 899 (quoting *Salt Lake Cty. v. Salt Lake City*, 570 P.2d 119, 121 (Utah 1977)). Our ripeness test, although not identical, is similar to the federal approach. Under the federal approach, ripeness is determined through a balancing test in which the court "balances the need for decision against the risks of decision." WRIGHT &

(Continued)

the resolution of a legal issue will be helpful in resolving or avoiding a particular controversy or possible litigation, this test suggests that courts should resolve legal issues only where the legal determination can be applied to the facts attendant to a specific controversy.

¶20 This principle, that issues are ripe for adjudication only where the legal determination can be applied to the facts of a particular controversy, is illustrated in cases involving challenges to the constitutionality or legality of statutes or ordinances. In this context, we have explained that "[w]here there exists no more than a difference of opinion regarding the hypothetical application of a piece of legislation to a situation in which the parties might, at some future time, find themselves, the question is unripe for adjudication."[16] In other words, a challenge to a statute is unripe unless the court's legal determination regarding the statute can be applied to specific facts in the case. This is true even where we have "no[] doubt" that the factual circumstances in which the legal determination would be applied will "arise at some future time."[17]

¶21 For example, in *Baird v. State* we explained that a "plaintiff may seek and obtain a declaration as to whether a statute is constitutional by . . . alleging facts indicating how he will be

_____

MILLER, *supra* ¶ 18 n.12, at § 3532.1. The need for decision is measured by the "probability and importance of the anticipated injury," and the risks of decision "are measured by the difficulty and sensitivity of the issues presented, and by the need for further factual development to aid decision." *Id.* In other words, federal courts determine ripeness after balancing "the hardship to the parties of withholding court consideration" on one side, and "the fitness of the issues for judicial decision" on the other. *Id.* Because this test often requires courts to make difficult "value judgments," it has been said that "[t]he general rule for determining whether ripeness exists is easy to state and hard to apply." *Id.* § 3532 (alteration in original) (citation omitted). Although we have never adopted the federal balancing test, we have previously considered many of the test's competing concerns in determining ripeness and, therefore, our case law may be consistent with the federal approach.

[16] *Redwood Gym v. Salt Lake Cty. Comm'n*, 624 P.2d 1138, 1148 (Utah 1981).

[17] *Id.*

damaged by its enforcement."[18] And we concluded that a "complaint is insufficient" if it "merely challenges the constitutionality of a statute without in some way indicating that plaintiff will be affected by its operation or is subject to its terms and provisions."[19] Thus a complaint challenging a statute's validity satisfies the ripeness requirement when it contains facts showing that the challenged statute has been applied or will imminently be applied in a way that harms the plaintiff.

¶22 This rule served as the basis of our decision in *Salt Lake County v. Bangerter*.[20] In that case, a number of counties appealed the dismissal of their claim challenging a provision in the tax code. We affirmed the dismissal because the counties "ha[d] failed to set forth the specific facts of any case that [had] arisen."[21] And, "[a]s far as we [could] determine from the record [of the case], no taxpayer [had] actually received a reduction of his property taxes under the [challenged] statute."[22] We held, therefore, that "[t]o render the constitutionality of the [challenged statute] ripe for adjudication," the counties had to "produce a tax assessment that [had] been challenged and reduced under the [challenged statute] with a resulting loss of revenue to the relevant county."[23] "In the absence of such a reduced assessment," we explained, "our hands [were] tied because a justiciable controversy necessarily involves an accrued state of facts as opposed to a hypothetical state of facts."[24] Like the unripe claim in the *Bangerter* case, the Counties' claims challenging the Threshold law are premised on a merely hypothetical state of facts.

¶23 In their complaint, the Counties frame their challenge of the Threshold law in hypothetical terms. They assert that "[*i*]*f* an assessment is below fair market value, but not below the 50% threshold . . . , only the taxpayer can seek administrative review." And because a taxpayer "has no incentive to file an appeal for an

---

[18] 574 P.2d 713, 716 (Utah 1978).

[19] *Id.*

[20] 928 P.2d 384, 385 (Utah 1996).

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* (citation omitted) (internal quotation marks omitted).

assessment below fair market value," "assessments below fair market value . . . will *likely* go unchallenged." According to the Counties, this statutory framework operates to violate the Utah Constitution "by insulating from administrative or judicial review State Tax Commission assessments that are below market value or are non-uniform." But the Counties do not allege they were actually barred from challenging a tax assessment, nor do they identify an assessment they would have challenged in the absence of the Threshold law. So nothing in the Counties' complaint suggests they have been harmed, or that harm is imminent, because of the Threshold law.

¶24 Nevertheless, on appeal the Counties argue their claim is ripe because the Threshold law "is invoked ab initio." In other words, the Counties argue that because the Threshold law "prevents any County to appeal any valuations that are below the 50% threshold since 2015," "there is not only a substantial likelihood that a controversy will develop in the future, but that [an] actual controversy has already occurred." But even though that may be true, there is nothing in the Counties' complaint to suggest that the Counties were prohibited, or dissuaded, from challenging any tax assessments since 2015. So, as it appears in their complaint, their challenge to the Threshold law is framed only by hypothetical facts. Accordingly, it is unripe.

*B. The district court did not err by declining
to consider the tax commission cases*

¶25 But the Counties argue that the district court erred in making its ripeness determination because it disregarded "factual evidence" showing that, after the complaint in this case had been filed, the tax commission dismissed four property tax appeals pursuant to the Threshold law. We disagree. The district court did not err, because the State filed a motion under rule 12(b)(1), in which it raised a facial attack on the pleadings, making it unnecessary for the district court to consider matters outside the pleadings.

¶26 "Motions under [r]ule 12(b)(1) fall into two different categories: a facial or a factual attack on jurisdiction."[25] In a factual

---

[25] WRIGHT & MILLER, *supra* ¶ 18 n.12, at § 1350; *see also Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) ("In order to properly dismiss for lack of subject matter jurisdiction under [r]ule 12(b)(1),
(Continued)

challenge to jurisdiction, the defendant "attacks the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts."[26] "In a facial challenge," on the other hand, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction."[27] So where defendants raise facial challenges to jurisdiction, they are not necessarily arguing that there is an irreparable jurisdictional defect. Instead, they are arguing that the allegations currently included in the complaint are insufficient to establish jurisdiction.

¶27  Because a facial attack on jurisdiction is "directed solely at the sufficiency of the complaint's jurisdictional allegations," it is "unlikely that affidavits or other materials outside the pleadings will be necessary."[28] Where the allegations in a complaint are insufficient to establish jurisdiction, the court "has at least two possible courses of action."[29] First, the court "may deny the motion and direct the [plaintiff] to amend the pleading."[30] Second, the court may dismiss without prejudice so that the plaintiff can later file an amended complaint.[31]

¶28  In this case, the State brought a facial attack on jurisdiction. In its motion to dismiss, the State argued that "[p]laintiffs have not pleaded facts regarding a specific assessment." And they explained that "[t]his failure is fatal because without specific facts and a specific assessment, there is no case or controversy before the

---

the complaint must be successfully challenged on its face or on the factual truthfulness of its averments."). We note that the facial versus factual distinction (and the related case law) comes from federal courts. Although we are not bound by federal case law, the federal cases we cite provide a helpful framing—one that is consistent with our rules of procedure—for addressing the problem with the Counties' complaint.

[26] WRIGHT & MILLER, *supra* ¶ 18 n.12, at § 1350.

[27] *Titus*, 4 F.3d at 593.

[28] WRIGHT & MILLER, *supra* ¶ 18 n.12, at § 1350.

[29] *Id.*

[30] *Id.*

[31] *Id.*

Court." So the State did not attack the factual allegations in the Counties' complaint. Instead, it argued for dismissal because the complaint lacked sufficient factual allegations. And in response to this argument, the district court did not need to consider any materials outside the pleadings.

¶29  But the Counties argue that the court's failure to consider evidence regarding the tax cases constituted reversible error because our case law suggests that where a court considers a rule 12(b)(1) motion to dismiss, it "should consider materials outside the pleadings, including supplemental factual allegations to determine whether any set of facts support the cause of action pled." The Counties' reliance on the cited case law is misplaced.

¶30  The Counties cite four cases in support of their argument: (1) *Coombs v. Juice Works Development Inc.*,[32] (2) *Wheeler v. McPherson*,[33] (3) *Spoons v. Lewis*,[34] and (4) *America West Bank Members, L.C. v. State*.[35] But none of these cases supports the Counties' position.

¶31  In *Coombs*, the Utah Court of Appeals reviewed the district court's dismissal of a contract case for improper venue under rule 12(b)(3).[36] Because the defendant in the case had attached a contract containing a forum selection clause as part of its motion to dismiss under rule 12(b)(3), the court of appeals considered whether it was appropriate to consider the contract without converting the motion into a rule 56 motion for summary judgment.[37] Citing Utah precedent, the court of appeals explained that only motions brought under rule 12(b)(6) would trigger a conversion to a motion for summary judgment.[38] Accordingly, it concluded that courts "*may* consider facts alleged outside the complaint" without converting the motion into one for summary judgment.[39]

---

[32] 2003 UT App 388, 81 P.3d 769.

[33] 2002 UT 16, 40 P.3d 632.

[34] 1999 UT 82, 987 P.2d 36.

[35] 2014 UT 49, 342 P.3d 224.

[36] *Coombs*, 2003 UT App 388, ¶ 7.

[37] *Id.*

[38] *Id.*

[39] *Id.* (emphasis added).

¶32 *Coombs* does not support the Counties' position for two reasons. First, in *Coombs*, the extra-pleading material at issue was brought by the defendant in support of the defendant's factual attack on venue. As discussed above, factual attacks on the pleadings necessarily require the introduction of materials outside the pleadings, by the defendant, to establish that the factual allegations in a plaintiff's complaint are not true. Accordingly, the court of appeals' statement regarding the appropriateness of considering materials outside the pleadings should be understood to apply to factual attacks on the pleadings. Second, by using the word "may," the court in *Coombs* suggested that courts retain discretion to consider, or to not consider, materials outside the pleadings. Thus the decision in *Coombs* does not stand for the proposition that a court must consider materials outside the pleadings, especially in deciding a facial challenge to jurisdiction.

¶33 *Wheeler* and *Spoons* also do not support the Counties' position. In these cases, we rejected the argument that a motion to dismiss under rule 12(b)(1) is automatically converted into a rule 56 motion for summary judgment where one or both of the parties attach materials outside the pleadings. As we explained in both cases, "the purpose underlying rule 12[(b)(6)'s] conversion requirement is 'to allow parties an adequate opportunity to rebut materials outside the pleadings.'"[40] These cases suggest that a court may consider material outside the pleadings in deciding a rule 12(b)(1) motion and—where necessary to give both parties an adequate opportunity to rebut materials outside the pleadings— may convert the motion into a rule 56 motion for summary judgment. But they do not suggest that a court must consider any attached material outside the pleadings. And they especially do not suggest that a court *must* consider material outside the pleadings where a plaintiff attaches it in response to a defendant's facial attack on the jurisdictional sufficiency of the plaintiff's complaint.

¶34 Finally, *America West Bank* does not support the Counties' position. In that case we reviewed a district court's dismissal, under rule 12(b)(6), for a failure to state a claim upon which relief could be granted.[41] Although we explained, as the Counties have indicated, that we should affirm a rule 12(b)(6) ruling only "if it clearly appears that [the plaintiff] can prove no set of facts in

---

[40] *Wheeler*, 2002 UT 16, ¶ 20 (quoting *Spoons*, 1999 UT 82, ¶ 4).

[41] 2014 UT 49, ¶ 7.

support of his claim," we also explained that in considering a rule 12(b)(6) motion, a court "need not accept extrinsic facts not pleaded nor need [it] accept legal conclusions in contradiction of the pleaded facts."[42] Because *America West Bank* deals with a rule 12(b)(6) motion, it is not particularly illuminating on the question raised by the Counties in this case. But to the extent it is relevant, *America West Bank* suggests that district courts need not consider extrinsic facts when considering whether a plaintiff has pled sufficient jurisdictional facts.[43] Accordingly, *America West Bank* does not suggest that district courts must consider materials outside the pleadings when considering a facial attack on jurisdiction under rule 12(b)(1).

¶35  In sum, the allegations in the Counties' complaint related to the Threshold law are facially insufficient to show that the Counties have been adversely affected, or will imminently be affected, by the Threshold law. So their Threshold law claim is unripe. And because of the nature of the jurisdictional defect—facial insufficiency in the pleadings—the district court did not err in declining to consider materials outside the pleadings to rectify the jurisdictional issue. Accordingly, we affirm the court's ripeness determination.

## II. We Affirm the District Court's Dismissal of the Counties' Remaining Claims Because Those Claims are Merely Requests for an Advisory Opinion

¶36 The Counties also argue the district court erred in dismissing their remaining claims for a failure to exhaust administrative remedies. They assert that the court's dismissal of these claims was in error because their claims "give rise to purely legal questions that cannot be obviated through administrative adjudication." Because the Counties' argument on appeal suggested that this case did not present an actual controversy, we requested supplemental briefing. After considering this briefing,

---

[42] *Id.* (first alteration in original).

[43] Although rule 12(b)(6) motions and rule 12(b)(1) motions are typically treated differently with respect to materials outside the pleadings, the nature of facial challenges to jurisdiction under rule 12(b)(1) is somewhat analogous to a challenge under rule 12(b)(6). For this reason, our statement in *America West Bank* regarding extrinsic facts in the context of rule 12(b)(6) motions may serve as a helpful analogy in analyzing facial challenges under rule 12(b)(1).

we are convinced that the Counties' claims are merely requests for advisory opinions. Because we do not issue advisory opinions, we affirm the district court's dismissal of those claims.

¶37 Although the extent of the judicial power is not clear in every context, our case law establishes that we do not "decide abstract questions."[44] This is due to the nature of an abstract question.

¶38 An abstract question is a question that is to be "considered apart from application to or association with a particular

---

[44] *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 19, 289 P.3d 582. Our analysis of abstract questions is guided by our case law. But even though the principle against deciding abstract questions is firmly established in our case law, we note that a debate exists regarding the source of this principle and the limits of our judicial power. This debate was recently highlighted in competing concurring opinions in *In re Gestational Agreement*, 2019 UT 40, 449 P.3d 69, opinions which focused on the requirement of adversariness—a related justiciability requirement identified in our case law. On one side of the debate is the view set forth in Justice Pearce's concurrence. In that opinion, Justice Pearce argued that we have consistently, and perhaps inaccurately, treated prudential concerns as constitutional limits on our jurisdiction when we have not yet undertaken the analysis that would permit us to speak definitely about the meaning of the Utah Constitution. *See id.* ¶ 58 (Pearce, J., concurring). And on the other side of the debate is the view set forth in Justice Lee's concurrence. According to Justice Lee, many of our traditional jurisdictional limits (such as the rule against deciding abstract questions at issue in this case) stem from the meaning of the term "judicial power" as it appears in Utah's constitution. *See id.* ¶ 131 (Lee, A.C.J., concurring). But in declining to answer the abstract question presented by the Counties in this case, we need not determine whether the rule against deciding such questions is merely prudential (consistent with Justice Pearce's view) or constitutionally-mandated (consistent with Justice Lee's view) because either view would lead to the same result.

So even though it is possible that, in a future case, a historical analysis of the original meaning of the Utah Constitution may lead us to rethink the way our case law has described the limits of the judicial power, we decline to revisit that case law unnecessarily here.

instance."[45] But, under our case law, a court cannot answer a legal question unless it is framed within "specific facts of [a] case that has arisen."[46] This is so even in the context of a declaratory judgment action.[47]

¶39   We have explained that even though Utah courts have "the power to issue declaratory judgments determining rights, status, and other legal relations within [their] respective jurisdiction,"[48] they nevertheless "must operate within the constitutional and statutory powers and duties imposed upon them."[49] Accordingly, the power to issue declaratory judgments does not transform our courts into "forum[s] for hearing academic contentions or rendering advisory opinions."[50] Thus courts should not "render declaratory judgments[] in the absence of an actual *controversy* directly involving rights."[51]

¶40   A "controversy" means a "case that requires a definitive determination of the law *on the facts alleged for the adjudication of an actual dispute*, and not merely a hypothetical, theoretical, or speculative legal issue."[52] Because there can be no "controversy" in the absence of specifically alleged facts regarding the dispute between the parties in a case, a court cannot render a declaratory

---

[45] *See Abstract*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998).

[46] *Salt Lake Cty. v. Bangerter*, 928 P.2d 384, 385 (Utah 1996).

[47] We have repeatedly explained that a court may grant requested declaratory relief only where the following conditions exist: "(1) a *justiciable controversy*; (2) the interests of the parties must be adverse; (3) the party seeking such relief must have a legally protect[a]ble interest in the *controversy*; and (4) the issues between the parties involved must be *ripe* for judicial determination." *Lyon v. Bateman*, 228 P.2d 818, 820–21 (Utah 1951) (emphases added).

[48] *Downs v. Thompson*, 2019 UT 63, ¶ 14, 452 P.3d 1101 (quoting UTAH CODE § 78B-6-401(1)).

[49] *Lyon*, 228 P.2d at 820.

[50] *Id.*

[51] *Utah Transit Auth.*, 2012 UT 75, ¶ 19 (emphasis added).

[52] *Controversy*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

judgment where a plaintiff has not framed the legal question to be decided within the context of a specific factual dispute.[53]

¶41   We note, however, that the Counties cite a number of cases they claim support the notion that a court may decide "purely legal questions" in the absence of an underlying factual dispute. Yet all of the cited cases, although presenting legal questions for judicial determination, presented factual circumstances in which the resolved legal questions could be applied.[54] So our case law does

---

[53] *See Jenkins v. Swan*, 675 P.2d 1145, 1149 (Utah 1983) ("A plaintiff with a direct and personal stake in the outcome of a dispute will aid the court in its deliberations by fully developing all the material factual and legal issues in an effort to convince the court that the relief requested will redress the claimed injury.").

[54] *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶¶ 1, 3, 34 P.3d 180 (plaintiff sought to have the tax commission's decision to apply a 12 percent special fuel tax to plaintiff's oilfield commodities business overturned on constitutional grounds); *Bangerter*, 928 P.2d at 386 ("If the Counties wish to attack the Equalization Act in the abstract without a specific controversy which is ripe for adjudication, they must approach the legislature, not this court."); *Brumley v. Utah State Tax Comm'n*, 868 P.2d 796, 797 (Utah 1993) (plaintiffs sought a tax refund for amounts paid in Utah state income tax on retirement income from federal sources for the tax years of 1985, 1986, 1987, and 1988); *Kennecott Corp. v. Salt Lake Cty.*, 702 P.2d 451, 453 (Utah 1985) (plaintiff sought "a partial refund of its 1981 property taxes previously paid under protest"); *Jenkins*, 675 P.2d at 1149 (denying plaintiff's request for declaratory judgment, which was based on "generalized grievances that [were] more appropriately directed to the legislative and executive branches of the state government"); *Johnson v. Utah State Ret. Office*, 621 P.2d 1234, 1236 (Utah 1980) (plaintiffs sought "payment of benefits paid into the retirement system on plaintiffs' behalf"); *State Tax Comm'n v. Wright*, 596 P.2d 634, 635 (Utah 1979) (defendant sought dismissal of a judgment for unpaid tax payments); *Baird*, 574 P.2d at 715 (overturning a district court's determination that a statute was unconstitutional on the ground that it was an "advisory opinion" because "[t]he alleged adverse actions of [the] defendant [State of Utah] consisted of the creation, administration, and enforcement of a legislative act" and "[t]he allegations concerning the unconstitutionality of the act were all pleaded in the abstract"

(Continued)

not support the Counties' argument that we can decide a pure legal question that is not tied to a specific set of facts. Indeed, it confirms that we are unable to answer abstract questions by rendering advisory opinions.

¶42 Accordingly, to plead a justiciable controversy, plaintiffs must plead "concrete facts" "indicating a[] specific injury sustained or threatened to [the] plaintiff[s]."[55] So where plaintiffs merely make "allegations concerning the unconstitutionality of [a statute] . . . in the abstract,"[56] they have not pled a controversy. Instead, their claims are more properly characterized as abstract questions, or, in other words, as requests for advisory opinions. Because, on the face of their complaint, the Counties do not frame their constitutional challenges in the context of a specific factual dispute, their claims are merely requests for advisory opinions.

¶43 Throughout the Counties' complaint, they purport to attack the Challenged laws "both facially and as applied to the 2017

---

without any "concrete facts . . . indicating any specific injury sustained or threatened to [the] plaintiff personally"); *Shea v. State Tax Comm'n*, 120 P.2d 274, 274 (Utah 1941) (plaintiff sought a refund of $4,696.45 for overpayments on fuel taxes); *TDM, Inc. v. Tax Comm'n*, 2004 UT App 433, ¶¶ 6–7, 103 P.3d 190 (per curiam) (summarily reversing a district court determination that the *factual record* needed to be further developed in an administrative proceeding before a case could be brought in the district court).

[55] *Bangerter*, 928 P.2d at 385 (citation omitted); *see id.* ("In a declaratory judgment action, the law itself is at issue. This does not remove the controversy requirement, however."); *see also Baird*, 574 P.2d at 716 ("A plaintiff may seek and obtain a declaration as to whether a statute is constitutional by averring in his pleading the grounds upon which he will be directly damaged in his person or property by its enforcement; by alleging facts indicating how he will be damaged by its enforcement; that defendant is enforcing such statute or has a duty or ability to enforce it; and the enforcement will impinge upon plaintiff's legal or constitutional rights. A complaint is insufficient which merely challenges the constitutionality of a statute, without in some way indicating that plaintiff will be affected by its operation or is subject to its terms and provisions.").

[56] *Bangerter*, 928 P.2d at 385.

tax assessments."[57] But even though the district court determined that the Counties' repeated references to the 2017 tax assessments rendered their claims regarding the Valuation and Allocation laws justiciable, the Counties' arguments on appeal make clear that the claims raised in their complaint are not based on the facts of the 2017 tax assessment or on any injury stemming directly from it.

¶44 In their briefing on appeal, the Counties distance themselves from any specific factual scenario and never couch their claims in the context of the 2017 assessment. Instead, they argue that their claims "give rise to purely legal questions" that "do not arise from a specific tax assessment challenged, unchallenged, or foregone." So it is clear that their claims do not stem from a

---

[57] "A statute may be unconstitutional either on its face or as applied to the facts of a given case." *State v. Herrera*, 1999 UT 64, ¶ 4 n.2, 993 P.2d 854. We note, however, that the complaint in the case before us fails to present any as-applied challenges. "In an as-applied challenge, a party concedes that the challenged statute may be facially constitutional, but argues that under the particular facts of the party's case, 'the statute was applied . . . in an unconstitutional manner.'" *Gillmor v. Summit Cty.*, 2010 UT 69, ¶ 27, 246 P.3d 102 (alteration in original) (footnote omitted). Typically, this type of challenge requires the plaintiff to show that, because of a particular quality or status of the plaintiff or the plaintiff's circumstances, the application of an *otherwise sound* statutory provision was unconstitutional. *See id.* ¶ 30 (explaining that a party's "as-applied" challenges were more properly classified as "facial challenges" because "nothing in [the party's] petition allege[d] that there was something uniquely unconstitutional about the way in which the ordinances were applied to her particular [circumstances]"); *Herrera*, 1999 UT 64, ¶ 22 (discussing a defendant's "as-applied" claim, which challenged a criminal statute's application to the defendant based on the defendant's mental illness). But nothing in the Counties' complaint discusses the specific manner in which the Challenged laws were applied to them. Instead, the complaint merely states that the laws were unconstitutional "as applied to the 2017 assessment." In fact, with the exception of the "as applied to the 2017 assessment" statement sprinkled throughout the complaint, most of the Counties' allegations are couched in hypothetical terms. So the Counties have not actually raised any as-applied challenges in their complaint.

"specific injury sustained or threatened."[58] Because the complaint is not based on a specific instance where the Challenged laws have been applied (or will imminently be applied), the Counties' complaint is merely a request for an advisory opinion on the constitutionality of the Challenged laws.

¶45 We also note that the problematic nature of the Counties' complaint is highlighted by the many other cases in which they have specifically attacked the Challenged laws based on the laws' application, or imminent application. As the State points out in its supplemental brief, the Counties have already raised constitutional concerns with the Challenged laws in multiple cases that are currently pending. In Utah, parties may not initiate "a separate declaratory judgment action when the same parties are already involved in a separate administrative action or proceeding involving identical issues."[59] Were we to allow parties to raise purely legal questions on "narrow issues taken out of . . . context" in separate declaratory judgment actions, we might "needlessly increase the risk of inconsistent or erroneous decisions."[60]

¶46 To ensure that this declaratory judgment action did not involve identical issues to those already presented in other cases, we asked the parties to provide supplemental briefing on whether "any of the Counties' claims in this case arise from facts stemming from a tax assessment that is not being challenged, or has not already been challenged, in another case." Although the State and the Airlines argued that the Counties have failed to bring a claim that had not already been brought in other cases, the Counties declined to address this question directly. So the "purely legal questions" the Counties have raised in this case may have already been raised within the factual context of another case. Thus, were we to answer the purely legal questions posed by the Counties in this case, we would risk arriving at a determination that is inconsistent with a determination made by a court that had the benefit of considering the same legal questions in a specific factual

---

[58] *Bangerter*, 928 P.2d at 385.

[59] *Hercules, Inc. v. Utah State Tax Comm'n*, 1999 UT 12, ¶ 9, 974 P.2d 286.

[60] *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 11, 428 P.3d 1133 (alteration in original) (citation omitted).

context. This possibility highlights the importance of adhering to the legal principles we have discussed in this opinion.

¶47   As we have explained, our case law has firmly established that courts should not render advisory opinions, or, in other words, answer abstract questions. And this remains true in the context of declaratory judgment actions. Because the Counties' claims are better characterized as requests for advisory opinions regarding the constitutionality of the Challenged laws, we do not address them.[61]

### Conclusion

¶48 We affirm the district court's dismissal, on ripeness grounds, of the Counties' claim challenging the Threshold law because the Counties' complaint is facially insufficient to show that the Threshold law adversely affected them. We also affirm the court's dismissal of the Counties' remaining claims on the ground that those claims are merely requests for an advisory opinion because none of the claims is tied to the facts of a particular controversy.

———————————

[61] *Utah Transit Auth.*, 2012 UT 75, ¶ 19 ("One of our earliest explications of justiciability noted that '[e]ven courts of general jurisdiction *have no power* to decide abstract questions or to render declaratory judgments, in the absence of an actual controversy directly involving rights.'" (alteration in original) (citation omitted)); s*ee also Jenkins*, 675 P.2d at 1149 (explaining that courts have the constitutional obligation to apply legal principles "to a particular dispute").